**Amy K. FRETZ, et al., Plaintiffs,**

v.

**Marshall KELTNER, et al., Defendants.**

**Civ. A. No. 84–2011–S.**

United States District Court,
D. Kansas.

Dec. 3, 1985.

On Motion for Reconsideration
Feb. 14, 1986.

Gates & Clyde, Chartered, Dennis M. Clyde, Overland Park, Kan., for plaintiffs.

Ruth M. Benien, Chairperson, Shawnee Mission, Kan., for amicus curiae Kansas Trial Lawyers Assoc.

Wayne T. Stratton, Marla J. Luckert, Goodell, Stratton, Edmonds, & Palmer, Topeka, Kan., for amicus curiae Kansas Medical Society and Kansas Hosp. Ass'n.

Reid F. Holbrook, Janet E. Moore, Mary Beth Blake, Fallon, Holbrook & Ellis, Kansas City, Kan., for Dr. Marshall Keltner.

Frank Saunders, Jr., Michael Oliver, Sally H. Harris, Laura K. Simpson, Wallace, Saunders, Austin, Brown & Enochs, Overland Park, Kan., Robert J. Gilliland, Gerald L. Green, Gilliland, Hayes, Dillon & Green, Hutchinson, Kan., for Hutchinson Hosp. Corp., Vickie Butler and Carol King.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the motion of defendant Hutchinson Hospital to compel answers to defendant's third set of interrogatories to plaintiffs. Defendant has also filed a motion to certify questions to the Kansas Supreme Court. The court will first consider defendant's motion for certification.

Defendant seeks to certify the following questions of law.

(1) Whether Substitute for Senate Bill No. 110 § 3 (Ch. 197 1985) violates the equal protection clauses of the United States and Kansas Constitutions; and

(2) Whether Substitute for Senate Bill No. 110 § 3 (Ch. 197 1985) can be applied retroactively pursuant to the provisions of the bill.

Senate Bill No. 110, which became effective on July 1, 1985, governs the admissibility of evidence of funds obtained from a collateral source in medical malpractice actions. This is the subject of defendant's motion to compel. K.S.A. 60-3201 provides:

The Kansas supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court, or the highest appellate court or the intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

Certification of a question of state law is discretionary. *Lehman Brothers v. Schein*, 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974). Certification should be confined to state law questions and the state court should not be asked to decide any issues of federal law that may be in the case. Wright, Miller, and Cooper, *Federal Practice and Procedure* § 4248, p. 529 (1978).

In the instant case, the question before this court involves the constitutionali-

ty of the state statute. It is essentially a question of federal law involving federally-protected rights. The court is not persuaded by defendant's argument that the questions presented are ones of state law and that this court could lessen its work load by certifying this question to the Kansas Supreme Court. It follows that defendant's motion to certify questions to the Kansas Supreme Court should be denied.

Next before the court is defendant's motion to compel answers to interrogatories. For the reasons stated below, this court finds that defendant's motion must be denied.

The questions defendant sought to be answered in its motion to compel related to whether plaintiff Amy Fretz is receiving any funds from any state or federal agency to assist in the costs of her care and whether plaintiff Amy Fretz has received any benefits from any insurance company for the medical expenses incurred. Plaintiffs object to the discovery of this information pertaining to payments from a collateral source and assert that Senate Bill No. 110, effective July 1, 1985, which makes these items admissible in medical malpractice cases, is unconstitutional.

The collateral source rule basically states that benefits conferred on an injured party from other sources are not credited against the tortfeasor's liability although they cover all or a part of the harm for which the tortfeasor is liable. *Restatement (Second) of Torts* § 920A (1979). The Kansas Legislature initially modified the collateral source rule for medical malpractice claims in 1976 by enacting K.S.A. 60–471. That statute was ruled unconstitutional in *Doran v. Priddy*, 534 F.Supp. 30 (D.Kan. 1981), and *Wentling v. Medical Anesthesia Services*, 237 Kan. 503, 701 P.2d 939 (1985).

K.S.A. 60–471 was repealed in 1985 and Senate Bill No. 110 was enacted in its stead. That statute provides:

> Sec. 3. (a) In any medical malpractice liability action, evidence of the amount of reimbursement or indemnification paid or to be paid or for the benefit of a claimant under the following shall be admissible:

> (1) Medical, disability or other insurance coverage except life insurance coverage; or (2) workers' compensation, military service benefit plan, employment wage continuation plan, social welfare benefit program or other benefit plan or program provided by law.

> (b) When evidence of reimbursement or indemnification of a claimant is admitted pursuant to subsection (a), the claimant may present evidence of any amounts paid to secure the right to such reimbursement or indemnification and the extent to which the right to recovery is subject to a lien or subrogation right.

> (c) In determining damages in a medical malpractice action, the trier of fact shall consider: (1) The extent to which damages award will duplicate reimbursement or indemnification specified in subsection (a); and (2) the extent to which such reimbursement or indemnification is offset by amounts or rights specified in subsection (b).

1985 Kansas Session Laws, Ch. 197.

Plaintiffs argue that Senate Bill No. 110 violates equal protection in that it singles out a class of plaintiffs (medical malpractice) and creates arbitrary, artificial and unreasonable distinctions. Although the statute was only recently enacted, two courts within this district have already ruled on its constitutionality. The Honorable Patrick F. Kelly ruled in *Crowe v. Wigglesworth*, 623 F.Supp. 699 (D.Kan.1985) that Senate Bill No. 110 is constitutional. Judge Kelly found the collateral source rule to be a procedural rule governing the admissibility of evidence and applied a rational basis test in determining whether the statute violates the equal protection clause of both the Kansas and United States Constitutions. The court concluded that the discriminatory treatment required by Senate Bill No. 110 was rationally related to purported legislative goals. The court stated: "The Legislature could reasonably conclude that insofar as the size of medical malpractice verdicts allegedly affects the so-called crisis, an effort to more closely relate those verdicts to the actual loss suf-

fered by plaintiffs would offer the malpractice insurance companies some relief...." At 705. Judge Kelly, however, still found the legislation to be "riddled with problems of a very prejudicial nature." At 705. Judge Kelly further stated:

> On a more fundamental level, this Court is not at all persuaded this discriminatory legislation is needed or that it will achieve its stated goals. Regarding need, defendants cavalierly refer to the "obvious" medical malpractice crisis justifying this legislation. What is apparently so clear to the medical profession, the insurance industry, their respective lobbyists, and the Legislature is a matter of deep and growing concern to this Court as well as a number of commentators and other courts across the country. In the Legislature's haste to remedy the situation, it has overlooked or, more likely, ignored the fundamental cause of this so-called crisis: it is the unmistakable result not of excessive verdicts, but of excessive malpractice by health care providers.

At 706.

The Honorable Frank G. Theis, in *Coburn v. Agustin*, 627 F.Supp. 983 (D.Kan. 1985), found Senate Bill No. 110 to violate the equal protection laws of both the United States and Kansas Constitutions. Judge Theis found the collateral source rule to be more than procedural and applied a heightened scrutiny test requiring an examination of the purposes of the legislation and the rationality of the link between those purposes and the legislation actually enacted, as well as a balancing of the interests served and the interests burdened. Judge Theis found the plaintiff's rights involved in this case to be significant and further found the class of medical malpractice claimants to be a sensitive class. In balancing the societal interests against the class interests served by the legislation, the court stated:

> ... The state goal of lowering malpractice insurance costs must be weighed against the interests of the victims of medical malpractice. While health care provider defendants receive a direct economic benefit, medical malpractice victims lose the ability to obtain full recovery for their injuries, whereas any benefit to the victims and indeed society in terms of improved quality of care is significantly attentuated.... In this case, a privilege is being created on behalf of doctors and insurance companies, while the class that pays the price is comprised of injured and powerless medical malpractice victims. The restriction of important rights of a disadvantaged class significantly outweighs the benefits sought to be conferred upon the privileged class.

At 996–97.

■ After reviewing the record and cited authorities, this court is in agreement with Judge Theis' conclusion in *Coburn v. Agustin, supra,* and finds Senate Bill No. 110 to be in violation of the equal protection clauses of the United States and Kansas Constitutions. Because of the substantive nature of the collateral source rule and the important rights restricted by Senate Bill No. 110, heightened scrutiny must be applied, and under this test the statute must fail. It follows that defendant's motion must be denied.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion to certify questions to the Kansas Supreme Court is hereby denied. IT IS FURTHER ORDERED that the motion of defendant Hutchinson Hospital to compel answers to defendant's third set of interrogatories to plaintiff is hereby denied.

## ON MOTION FOR RECONSIDERATION

This matter is before the court on defendant Hutchinson Hospital Corporation's Motion For Reconsideration Or In The Alternative To Alter Or Amend, plaintiffs' Motion To Compel Discovery Of Peer Review Records Pertaining To Defendants From Defendant Hutchinson Hospital Corporation, plaintiffs' Motion To Compel Discovery Of Financial Information From Defendants Hutchinson Hospital Corporation, Carol King and Vickie Butler, and plain-

tiffs' Motion To Compel Discovery of JCAH Accreditation Documents From Defendant Hutchinson Hospital Corporation.

The court will first consider the motion of Hutchinson Hospital Corporation for reconsideration. Defendant argues that this court should reconsider its December 3, 1985, order denying certification to the Kansas Supreme Court and holding that Senate Bill 110 violates the United States and Kansas Constitutions. The court finds that defendant has raised no new arguments in support of its position, therefore its motion to reconsider shall be denied.

Defendant also argues, in the alternative, to alter or amend to permit interlocutory appeal. Section 1292(b), Title 28, United States Code, provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after entry of the order: *Provided,* however, That application for an appeal hereinunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

■ Defendant argues for interlocutory appeal on the basis that there is a substantial ground for difference of opinion in light of conflicting opinions within the district, and that the ultimate termination of this litigation would be materially advanced and would eliminate the potential retrial of this case. The Judicial Conference Committee of the United States which proposed § 1292(b) stated that it:

> should and will be used only in exceptional cases where a decision of the appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases ... It is not thought that district judges would grant the certificate in ordinary litigation which could otherwise be promptly disposed of or that mere question as to the correctness of the ruling would prompt the granting of this certificate....

1958 United States Cong.Code & Adm. News 5260–5261. Certification under § 1292(b) is limited to cases involving exceptional circumstances. See *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

■ Three criteria must be met for the court to certify an order for review. The court must find that the order involved a controlling question of law, that substantial ground for difference of opinion exists on this question of law, and that an immediate appeal might materially advance the ultimate termination of the litigation. *In Re Pacific Homes,* 456 F.Supp. 851 (C.D. Cal.1978). After careful review, the court finds that interlocutory appeal in this instance would serve to delay the ultimate termination of this litigation rather than materially advance its termination. The issue is, of course, preserved and may be raised on appeal, if necessary, following a final order and judgment in this court.

Next before the court is plaintiffs' motion to compel from defendant Hutchinson Hospital Corporation the discovery of peer review records pertaining to the defendants. On February 8, 1984, plaintiffs served on defendant Hutchinson Hospital, Carol King and Vickie Butler plaintiffs' first request for production of documents and things. Defendants were requested to produce in accordance with paragraph 18:

> 18. Any and all reports, records, minutes and/or evaluations of any review committee, peer review committee, and any other committees of the Hospital, which reviews the quality of patent care pertaining to or in any way relating to Dr. Marshall Keltner, Carol King and/or Vickie Butler, including but not limited to any such documents pertaining to or

in any way relating to their care and/or treatment of Rebecca J. Fretz and/or Amy K. Fretz.

On February 21, 1984, defendants jointly responded and stated in paragraph 18 of their response "none exist." Plaintiffs thereafter served supplemental interrogatories on March 5, 1984. The interrogatories requested information regarding whether the hospital practices included review committees and, further, whether such records were maintained by the hospital. Defendant Hutchinson Hospital responded in the affirmative. Plaintiffs received this response in May of 1984. Thereafter, on May 18, 1984, plaintiffs served a second request for production of documents and things on defendant Hutchinson Hospital Corporation, which was specifically directed at discovering the peer review committee minutes and records which defendant admitted existed. Defendants responded to this second request with an objection on August 6, 1984.

Throughout the time of plaintiffs serving on defendant Hutchinson Hospital Corporation their second request for production of documents and things the law in Kansas pertaining to the discoverability of peer review committee minutes and records was stated in *Wesley Medical Center v. Clark*, 234 Kan. 13, 669 P.2d 209 (1983). That case held that there is no privilege protecting hospital peer review committee records from discovery except for those that fall within the physician/patient privilege.

On July 1, 1984, the Kansas Legislature passed K.S.A. 65–4914 and 65–4915, which created a privilege for hospital peer review committee records and declared them to be nondiscoverable. Had defendants correctly and timely responded, it is apparent that the records sought by plaintiffs would have been discoverable.

■ The record does not reveal that defendant in any way responded to plaintiffs' second request for production of documents until August 6, 1984, when defendant objected on the basis of K.S.A. 65–4914 and 65–4915. Pursuant to Rule 33(a), Federal Rules of Civil Procedure, defendant had thirty (30) days in which to serve an answer or to object. Failure to answer or object in a timely manner constitutes a waiver of the right to object. *Perry v. Golub*, 74 F.R.D. 360 (N.D.Ala.1976); *American President Lines v. Hartford Fire Ins. Co.*, 55 F.R.D. 61 (E.D.Pa.1971). This waiver includes claims of privilege. *United States v. 58.16 Acres of Land*, 66 F.R.D. 570 (E.D.Ill.1975). There is no provision in the federal rules for preserving objections. *Casson Construction Co. v. Armco Steel Corp.*, 91 F.R.D. 376 (D.Kan. 1980). Here, defendant's objections were made well outside of the 30-day time period of Rule 33(a). Under these circumstances, the court finds defendant to have waived any objections to interrogatories.

■ The court finds the requested material should be produced. Defendant should produce this requested material within ten (10) days from the date this memorandum and order is filed. However, due to the strong public policy surrounding K.S.A. 65–4914 and 65–4915, the court finds that all records, documents and tangible things produced pursuant to this portion of the court's order shall be used solely for the preparation and trial of this case and not for any other purpose, nor disclosed to any other person except upon order of this court.

■ Another matter was brought to the court's attention when considering this motion to compel. Initially, on February 21, 1984, defendant's response to Request No. 18 of plaintiffs' request for production of documents and things was that "none exist." Plaintiffs later discovered that such documents did in fact exist. Defendant asserts that its response that "none exist" was truthful and that this answer to Request No. 18 was based on the fact that no peer review records exist relating to the care and/or treatment of Rebecca J. Fretz and Amy K. Fretz. Defendant asserts that the supplemental interrogatory questions did not refer to Rebecca J. Fretz or Amy K. Fretz, therefore defendant answered in the affirmative. The court finds that plain-

tiffs' Request No. 18 of the first request for production of documents and things could not have been clearer that it was not to be limited to only those records pertaining to Rebecca J. Fretz or Amy K. Fretz. Request No. 18 specifically states "[a]ny and all reports ... *including but not limited to* any such documents pertaining to ... the care and/or treatment of Rebecca J. Fretz and/or Amy K. Fretz." (Emphasis added.)

After careful review and consideration, the court finds Rule 26(g) of the Federal Rules of Civil Procedure to have been violated in this instance. Rule 26(g) requires every request for discovery or response or objection thereto to be signed by an attorney or by a party who is not represented by an attorney. Such signature by an attorney or party certifies that to the best of his knowledge, information and belief, formed after a reasonable inquiry, the request, response or objection is:

(1) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation....

Rule 26(g) further provides:

If a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

The notes of the Advisory Committee on Rules state:

The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection. The term "response" includes answers to interrogatories and to requests to admit as well as responses to production requests.

The notes further provide:

Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request. Rather, the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand.. .

The court does not find defendant's response to Request No. 18 to be reasonable or to be based on a reasonable inquiry considering the clear language of the request. The court finds that sanctions are proper pursuant to Rule 26(g), and plaintiff is hereby directed to file, within ten (10) days of the date this memorandum and order is filed, appropriate affidavits and memoranda regarding reasonable expenses incurred because of defendant's incorrect response to Request No. 18. Defendant shall thereafter have ten (10) days in which to respond thereto.

█ Next before the court is plaintiffs' motion to compel discovery of financial information from defendant Hutchinson Hospital Corporation, Carol King and Vickie Butler. Defendants object to the production of this information on the basis of their belief that plaintiffs will be unable to make a submissible claim for punitive damages at the time of trial. After careful review, this court finds that this information should be produced and plaintiffs' motion to compel should be granted. This is a medical malpractice action in which plaintiffs have stated a claim for punitive damages. While not ultimately ruling on the issue of whether there is a submissible punitive damages claim, the court does find

that plaintiffs have alleged sufficient facts in support of their position, therefore the requested financial information is both relevant and discoverable. See *Miller v. Doctor's General Hospital*, 76 F.R.D. 136, 140 (W.D.Okla.1977). Defendants shall have ten (10) days from the date this memorandum and order is filed in which to produce the requested material.

The court will now consider plaintiffs' Motion To Compel Discovery Of JCAH [Joint Committee On Accreditation Of Hospitals] Accreditation Documents from Defendant Hutchinson Hospital Corporation. On January 10, 1985, plaintiffs served on defendant a fourth request for production of documents and things, seeking, in part, JCAH accreditation documents pertaining to defendant Hutchinson Hospital Corporation for the period during which Amy K. Fretz was born. Defendant objected to this request on the basis of K.S.A. 65–4914 and 65–4915 arguing that these documents fall within the privilege created for peer review committee records. Defendant argues that within the terms of K.S.A. 65–4915(b)(1), the JCAH is a committee appointed by local associations of health care providers to evaluate the quality of care and services rendered.

The Joint Committee On Accreditation Of Hospitals is a corporation which provides voluntary membership for hospitals throughout the United States. Those hospitals which are members of the corporation have become members voluntarily and voluntarily elect to submit to surveys, studies and reports on the characteristic, quality and kind of health care services offered through the hospital, as well as criticisms and recommendations of the members health care services. The JCAH is not authorized under any state or federal law to evaluate, review or make any determination as to health care services. The JCAH has no power or authority under state or federal law to require or implement the improvement of health care services at any institution. The JCAH evaluates all health care services provided by a hospital and makes a single accreditation decision based on a single survey report.

K.S.A. 65–4915(b)(1) provides:

As used in this section, "peer review committee" means a committee of, or appointed by: (1) A state or local association of health care providers ... if the committee so formed ... is authorized to perform any of the following functions:

(A) Evaluate and improve the quality of health care services rendered by health care providers; ...

It is clear that the JCAH performs functions which would bring it within the definition of a peer review committee. Further, the JCAH is an association to which local hospitals voluntarily submit for review in order to improve the quality of health care services. This is the type of situation which K.S.A. 65–4914 and 65–4915 were meant to embrace. These statutes were drafted to insure that peer review committees would be able to function effectively by allowing for candid and open discussion. These statutes were adopted to insure the continuation of quality health care. With that in mind, the court finds that the JCAH accreditation documents are not discoverable. This ruling in no way prevents discovery of whether the defendant applied for a JCAH survey and whether the defendant hospital was or was not accredited for any given period.

IT IS BY THE COURT THEREFORE ORDERED that the motion of defendant Hutchinson Hospital Corporation for reconsideration or in the alternative to alter or amend is hereby denied. IT IS FURTHER ORDERED that plaintiffs' motion to compel from defendant Hutchinson Hospital Corporation discovery of peer review records pertaining to defendants is hereby granted and defendants shall have ten (10) days from the date this memorandum and order is filed in which to produce the requested material. IT IS FURTHER ORDERED that sanctions are proper pursuant to Rule 26(g), Federal Rules of Civil Procedure, and plaintiffs are hereby directed to file, within ten (10) days of the date this memorandum and order is filed, appropri-

ate affidavits and memoranda regarding reasonable expenses incurred because of defendant's incorrect response to Request No. 18. Defendant shall thereafter have ten (10) days in which to respond thereto. IT IS FURTHER ORDERED that plaintiffs' motion to compel discovery of financial information from defendant Hutchinson Hospital Corporation, Carol King and Vickie Butler is hereby granted and defendants shall have ten (10) days from the date this memorandum and order is filed in which to produce the requested material. IT IS FURTHER ORDERED that plaintiffs' motion to compel discovery of JCAH accreditation documents from defendant Hutchinson Hospital Corporation is hereby denied.