James R. CAHELA and J. Faye Cahela, Plaintiffs,

v.

JAMES D. BERNARD, D.O., P.C. and James D. Bernard, Defendants.

Civ. No. 1:93–cv–1071–JEC.

United States District Court, N.D. Georgia, Atlanta Division.

March 17, 1994.

David H. Flint, Timothy C. Batten, Schreeder, Wheeler & Flint, Atlanta, GA, for plaintiffs.

Henry D. Green, Jr., Sullivan, Hall, Booth & Smith, Atlanta, GA, for defendants.

## ORDER

CARNES, District Judge.

This case is presently before the Court on plaintiffs' Motion to Strike [9–1], defendants' Motion for Oral Argument [14–1] and plaintiffs' Motion to Compel [17–1]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiffs' motions should be granted in part and denied in part.

## BACKGROUND

This a medical malpractice case arising out of defendants' treatment of plaintiff James R. Cahela during the summer of 1991 for a suspicious lump or lesion on Mr. Cahela's lower lip. After a biopsy of the suspicious tissue, it was determined that plaintiff was suffering from a type of cancer. In plaintiffs' Complaint, they contend that Dr. Bernard was negligent in his treatment of Mr. Cahela

in that he failed to refer him to a qualified surgeon in a timely fashion and did nothing to prevent the spread of the cancer.

Plaintiffs originally filed their lawsuit against defendants in the Superior Court of DeKalb County, but later dismissed that action, without prejudice, on May 17, 1993. The instant action was filed on May 18, 1993 and defendants filed their answer on June 7, 1993. In their answer, defendants have raised several defenses which plaintiffs contend are insufficient and, therefore, subject to being stricken, pursuant to FED.R.CIV.P. 12(f).

On July 12, 1993, plaintiff James Cahela served his first interrogatories upon the defendants, who then served their answers on July 30, 1993. Plaintiffs now contend that defendants' answers and/or objections to these interrogatories were improper and in contravention of the liberal discovery provisions embodied in FED.R.CIV.P. 26 and 33 ("Rules 26 and 33").

## DISCUSSION

### I. *Plaintiffs' Motion to Strike.*

#### a. *Introduction.*

Plaintiff has moved to strike defendants' first (failure to state a claim upon which relief can be granted), second (failure to comply with O.C.G.A. § 9–11–9.1), third (laches/statutes of limitation), fourth (lack of subject matter jurisdiction) and fifth (improper venue) defenses, as those defenses were stated in defendants' answer, pursuant to FED. R.CIV.P. 12(f). In their response to plaintiffs' motion, defendants do not oppose striking their first, fourth and fifth defenses. Accordingly, the Court grants plaintiffs' motion with respect to these defenses as unopposed. *See* LR 220–1(b)(1), NDGa. Defendants do oppose plaintiffs' motion to strike with respect to their second and third defenses. For the reasons discussed below, the Court concludes that it should deny plaintiffs' motion with respect to defendants' second and third defenses.

#### b. *Defendants' Second Defense.*

Defendants' second defense alleges that plaintiff failed to comply with the requirements of O.C.G.A. § 9–11–9.1 ("§ 9–11–9.1") and, thus, that plaintiffs' lawsuit is subject to dismissal for such failure. Section 9–11–9.1 of the Georgia Code requires that any plaintiff in an action for professional negligence, such as medical malpractice, file with the complaint an affidavit of an expert competent to testify that attests to at least one negligent act or omission on the part of the defendant. Plaintiffs seek to strike defendants' second defense on two alternative grounds. First, plaintiffs assert that § 9–11–9.1 is procedural in nature and, thus, does not apply in federal court pursuant to the Supreme Court's decisions in *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Alternatively, plaintiffs argue that they have complied with the requirements of § 9–11–9.1 by submitting the affidavit of Dr. Bernard Lerman contemporaneously with their Complaint.

■ In support of their motion to strike, plaintiffs claim that the question of whether § 9–11–9.1 applies in federal court has been answered in the negative and, thus, defendant has no basis in law upon which to base such a defense. *See Boone v. Knight,* 131 F.R.D. 609 (S.D.Ga.1990) (§ 9–11–9.1 does not apply in federal court). In opposing plaintiffs' motion to strike, defendants argue that the issue of whether § 9–11–9.1 applies to medical malpractice actions brought in federal court is presently unsettled, at least in the Northern District of Georgia. In support of their argument, defendant cites two orders by federal district judges in the Northern District that have reached opposite conclusions. *See Brown v. Nichols,* No. 1:90–CV–1413–GET (N.D.Ga. Dec. 7, 1990) (Tidwell, J.) (§ 9–11–9.1 does apply in federal court); *McGlamery v. Bruttomesso,* No. 1:88–CV–787–RCF (N.D.Ga. Jun. 15, 1989) (Freeman, J.) (§ 9–11–9.1 does not apply in federal court).

As defendants have observed, motions to strike defenses pursuant to FED.R.CIV.P. 12(f) are not readily granted.

It is axiomatic that motions to strike are not favored and are, therefore, infrequent-

ly granted. Similarly, such motions may not be used to test the evidentiary sufficiency of the pleadings. Therefore, such motions will not be granted unless the allegations are so immaterial that they can have no possible bearing on the issues at trial and unless their presence unduly prejudices the opposing party, especially in complex cases. Professors Wright and Miller summarize the judicial reluctance to grant motions to strike and their limited utility as follows: "In sum, a motion to strike will not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits. 5 C. Wright & A. Miller, *Federal Practice & Procedure,* § 1381 at 802 (1969). *United States v. Southern Motor Carriers Rate Conference,* 439 F.Supp. 29, 39 (N.D.Ga. 1977) (Freeman, J.) (citations omitted). Given the current unsettled state of the law with respect to the applicability of § 9–11–9.1 in federal court, the Court concludes that it cannot strike defendants' second defense based upon plaintiffs' argument that the defense is frivolous on its face.

■ Plaintiffs also argue that defendants' second defense should be stricken because plaintiffs have complied with requirements of § 9–11–9.1 by submitting the affidavit of Dr. Lerman in support of their Complaint. In essence, plaintiffs argue that the statute requires an affidavit and they complied by submitting one, thus, defendants' second defense must be stricken. Defendants have, however, challenged the sufficiency of the affidavit submitted in support of the Complaint. Defendants argue that the affidavit required by § 9–11–9.1 must be that of a physician competent to testify with respect to the standard of care that should have been exercised by the defendant physician. In opposing plaintiffs' motion to dismiss, defendants have challenged the competence of Dr. Lerman to give expert testimony regarding defendant Dr. Cahela's area of specialty. It appears to the Court that the resolution of the issue of whether Dr. Lerman is competent to give

testimony with respect to Dr. Cahela's area of specialty is ill-suited to disposition on a motion to strike.[1] Accordingly, the Court concludes that plaintiffs' motion to strike defendants' second defense should be denied.

### c. *Defendants' Third Defense.*

■ Defendants' third defense is that plaintiffs' claims are time-barred pursuant to the equitable doctrine of laches and/or the applicable statutes of limitation for plaintiffs' claims. Plaintiffs assert that their claims cannot be time-barred because they were brought within Georgia's two year statute of limitation applicable to medical malpractice claims, and, thus, defendants lack any basis in law or fact to assert such defenses. Defendants argue that plaintiffs' claims may be time-barred due to their failure to *properly* initiate a lawsuit within the applicable statute of limitation. According to defendants' argument, if § 9–11–9.1 were to apply in federal court and if Dr. Lerman's affidavit is found to be insufficient to satisfy the requirements of § 9–11–9.1, then plaintiffs' claims could be time-barred. As defendant notes, failure to file a sufficient affidavit contemporaneously with the complaint could be fatal to plaintiffs' claims, as plaintiff would not be permitted to amend the affidavit originally submitted or substitute another unless plaintiffs "had the requisite affidavit available prior to filing the complaint and the failure to file the affidavit was the result of a mistake." O.C.G.A. § 9–11–9.1(e) (1993).

Based upon the foregoing, the Court concludes that defendant has directed its attention to a basis in law or fact for its third defense. Accordingly, the Court concludes that plaintiffs' motion to strike defendants' third defense should be denied.

### II. *Plaintiffs' Motion to Compel.*

#### a. *Introduction.*

Plaintiffs have moved to compel answers to certain interrogatories propounded to defendants on July 12, 1993. Plaintiffs assert that

---

1. The resolution of this issue is better suited to a motion on the merits, rather than a purely procedural motion such as is presently before the Court. Accordingly, the Court reserves any rul-ing on the substance of defendants' challenge to Dr. Lerman's competence until an appropriate motion is filed.

defendants have failed to answer Question Six of plaintiffs' first interrogatories[2] and that defendants have interposed groundless objections to Questions Ten and Eleven of plaintiffs' first interrogatories. Plaintiffs assert that defendants' objections to Questions Ten and Eleven are contrary to the liberal discovery provisions embodied in FED. R.CIV.P. 26 and 33. For the reasons discussed below, the Court concludes that plaintiffs' motion should be denied.

b.  *Interrogatory Question Six.*

■ Question Six of plaintiffs' first interrogatories to defendants was:

> If you contend that plaintiff's [Mr. Cahela] breathing problems (i.e, [sic] the condition which led you to refer him to Dr. Bluestein) or the treatment thereof had anything to do with the condition or treatment of his lip/lesion, state exactly and in detail what you contend the interrelationship is (or was), including without limitation your contention as to the effect of plaintiff's breathing problems and the treatment thereof on the condition and treatment of his lip/lesion.

Defendants' first response was:

> It was by belief that by late May or early June, 1991, Mr. Cahela's pulmonary problems required immediate evaluation, whereupon I provided him with an appropriate referral to Dr. Bluestein. It was my intent to continue monitoring the status of Mr. Cahela's lip for an appropriate period of time while his pulmonary condition was being stabilized and then undertake further evaluation of the lip as necessary.

Defendants' supplemental response was:

> As I stated in my first response, it was my feeling as of the office visit of June 4th, that Mr. Cahela's pulmonary problems required immediate evaluation. That was the reason for my referral to Dr. Bluestein. At the same time, I continued to

monitor the status of Mr. Cahela's lip while his pulmonary condition was being evaluated by Dr. Bluestein. I do not contend, however, that Mr. Cahela's condition affected the timing for my decision on a surgical or oncological evaluation.

Plaintiffs assert that defendants' responses do not answer the question asked. Contrary to plaintiffs' arguments, however, the Court finds that defendants have made a good faith attempt to answer an inartfully drafted question and have provided an adequate response to the question propounded to them.

In their motion to compel and the subsequent reply in support of the motion, plaintiffs assert that Question Six seeks to discover two pieces of information. Plaintiffs' interpretation of Question Six is that it asks:

1.  Was the lump in Mr. Cahela's lip related in any way to his breathing problems?

2.  Did the existence of Mr. Cahela's breathing problems, or Dr. Bluestein's treatment thereof, affect Dr. Bernard's treatment of Mr. Cahela in any way?

The substance of these two questions may have been what plaintiffs intended to ask, but the Court cannot distill the same import from the question actually propounded. Plaintiffs' Question Six is qualified by the opening clause which states, *"If you contend* that plaintiff's breathing problems or the treatment thereof had anything to do with the condition or treatment of his lip/lesion ..."* (Pls.' First Interrogs. Number 6 (emphasis added)). Thus, defendants only needed to provide information regarding the interrelationship of Mr. Cahela's breathing problems and his lip/lesion condition or treatment, if Dr. Bernard contends such an interrelationship exists. Based upon defendants' responses to Question Six, it appears that Dr. Bernard does not contend that Mr. Cahela's breathing problems related to the condition or treatment of his lip/lesion. Accordingly, the Court concludes that defendants have

---

**2.**  Originally, plaintiffs also complained about the sufficiency of defendants' answer to Question One of plaintiffs' first interrogatories. Subsequently, defendant supplemented their answers to Questions One and Six and asserted that such supplements adequately answered the questions.

Plaintiffs agree that defendants' supplemental answer to Question One is now satisfactory and, thus, plaintiffs no longer seek to compel an answer to this question. Plaintiffs continue to challenge the sufficiency of defendants' answer to Question Six, however.

answered the question as it was posed and that plaintiffs' motion to compel should be denied with respect to Question Six.

Should plaintiffs want an unambiguous answer to the questions they intended to propound in Question Six, they should propound unambiguous questions seeking such responses. Likewise, if defendants do contend that there is any relationship between the condition and treatment of Mr. Cahela's lip/lesion and the existence and/or treatment of his breathing problems, they must amend their response to Question Six accordingly. Otherwise, as defendants' answers currently stand, they will be deemed to have admitted that no such relationship exists.

c. *Interrogatory Question Ten.*

■ Question Ten of plaintiffs' first interrogatories to defendants was:

Looking back, is there anything in respect to the way you treated Mr. Cahela that you think you should have done, or wish you would have done, differently?

Defendants objected to the question as asked because they assert that is not reasonably calculated to lead to admissible evidence. The basis of defendants' objection is that, under Georgia law, "hindsight" evaluations of a physician's treatment of a patient may not be considered in determining whether a physician met the requisite standard of care in the treatment of a patient. *See Brannen v. Prince,* 204 Ga.App. 866, 871, 421 S.E.2d 76 (1992). The Georgia cases distinguish between foresight and hindsight with respect to malpractice determinations. *Id.* Only the former may be considered in determining the appropriate standard of care. *Id.* Thus, the only relevant determination, is whether, given the information available to the physician at the time, the physician met the requisite standard of care. *Id.*

■ Plaintiffs agree that "hindsight" determinations are not relevant to the resolution of malpractice cases, but assert that the interrogatory at issue is reasonably calculated to lead to admissible evidence. Plaintiffs argue that Interrogatory Ten, as propounded to the defendants, does not elicit such impermissible hindsight opinion in response. According to plaintiffs, "the question simply

asks what, if anything, Dr. Bernard thinks he should have done, or wishes he would have done, differently with respect to his treatment of Mr. Cahela—even assuming that Dr. Bernard had the same information available to him that was in fact available to him during his treatment of Mr. Cahela." (Pls.' Mot. to Compel at 5). Once again, plaintiffs' interpretation of their question is not supported by the language used in the question itself.

The express language of Interrogatory Ten begins with "Looking back." Contrary to plaintiffs' assertions, the Court concludes that such language clearly seeks an opinion in "hindsight." Plaintiffs' arguments to the contrary result in, at best, a tortured meaning of a question which, on its face, asks the defendant doctor to "look back." Thus, as the parties agree that "hindsight" evaluations are irrelevant to medical malpractice determinations, the Court concludes that plaintiffs' motion to compel should be denied because it is not reasonably calculated to lead to admissible evidence.

d. *Interrogatory Question Eleven.*

■ Question Eleven of plaintiffs' first interrogatories to defendants was:

Do you dispute any of the March 25, 1993 deposition testimony of either plaintiff? If so, identify (by deposition page and line numbers) the portion(s) of his or her testimony with which you disagree.

Defendants initially objected to the question because "it is an attempt to usurp the function of the jury in determining the facts of the case." (Defs.' Answers to Pls.' First Interrogs. Number Eleven). Plaintiffs, and the Court, are "unfamiliar with this basis for objecting to an interrogatory." (Pls.' Mot. to Compel at 6). In a supplemental response to plaintiffs' First Interrogatories, defendants further object to the question on the grounds that "it is burdensome and oppressive." (Supplemental Resp. of Defs.' to Pls.' First Interrogs. Number 11). Plaintiffs' argue in reply that defendants' waived the "burdensome and oppressive" objection by failing to raise it when they first responded to Ques-

tion Eleven and, further, that Question Eleven is not susceptible to any such objection.

Plaintiffs assert that, as a general rule, when a party fails to object to an interrogatory within the time allotted to respond, the right to object is waived. *See Godsey v. United States*, 133 F.R.D. 111 (S.D.Miss. 1990); *Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D.Conn.1989); *Fretz v. Keltner*, 109 F.R.D. 303, 309 (D.Kan.1985); *Turick v. Yamaha Motor Corp.*, 121 F.R.D. 32, 36 (S.D.N.Y. 1988). More specifically, plaintiffs assert that the cited authority requires *all* objections to be raised within the time to respond or else they are waived. As plaintiffs' argument goes, defendants are limited to the objection they made prior to the expiration of the time to respond to plaintiffs' First Interrogatories, and, thus, defendants may not now raise their "burdensome and oppressive" objection to Question Eleven.

The Court declines to read the cited authority so broadly. In each of the cited cases, the party to whom the interrogatories were propounded completely failed to respond or object to such interrogatories within the time allowed to answer. *See Godsey*, 133 F.R.D. at 112 (no response for approximately ninety seven days); *Scott*, 124 F.R.D. at 41 (nonmovant never responded or objected to interrogatories at issue); *Turick*, 121 F.R.D. at 36 (nonmovant never responded or stated any objection); *Fretz*, 109 F.R.D. at 309 (nonmovant did not respond in any way to movant's discovery request). Upon a complete reading of these cases, the Court concludes that they stand for the proposition that the *"[f]ailure to answer or object* in a timely manner constitutes a`waiver of the *right to object."* *Fretz*, 109 F.R.D. at 309 (emphasis added); *see also Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981) (accord). In the case at bar, defendants did respond and object to Question Eleven within the time prescribed by FED.R.CIV.P. 33(a).[3] Moreover, upon realizing the insufficiency of their original objection, defendants promptly supplemented their response to Question Eleven with a valid objection.[4] Thus, the Court concludes that defendants' supplemental objections are properly before the Court and defendants did not waive such objections by failing to include them in their first response.

■ Notwithstanding defendants' objections to Question Eleven, plaintiffs maintain that the question, as asked, is proper under Rules 26 and 33. Contrary to plaintiffs' arguments, however, the Court concludes that Question Eleven is overly broad, burdensome and oppressive.[5] In order to answer the interrogatory as posed, defendants would have to review each and every statement in both plaintiffs' depositions and then determine whether to dispute each contention of both plaintiffs. As defendants point out, this process would be tedious, time-consuming and expensive. There are much more efficient means by which plaintiffs' could elicit

---

3. In pertinent part, Rule 33(a) requires a party to respond to interrogatories within thirty days unless the parties agree otherwise or the court orders otherwise.

4. Plaintiffs' first interrogatories were served on defendants on July 12, 1993, and, according to FED.R.CIV.P. 33(a), defendants had until August 11, 1993, to respond. Defendants' first responses were served on July 30, 1993. In their first response, defendants objected to Question Eleven. On August 31, 1993, defendants supplemented their response to Question Eleven and raised their "burdensome and oppressive" objection. Thus, defendants' supplemental objection was raised approximately twenty days after the expiration of their time to respond. Also, defendants clarified the meaning of their original objection in their opposition to plaintiffs' motion to compel. In essence, defendants' original objection was for overbreadth because, as propounded, the question would "place Defendants in the position

of disecting [sic] each deposition and setting forth each and every factual dispute, no matter how minor." (Defs.' Resp. to Pls.' Mot. to Compel at 3). Under these facts, the Court does not find defendants' objections to be "untimely".

5. Additionally, it appears highly likely that Question Eleven violates Local Rule 225–2(a), which limits the number of interrogatories a party may serve upon another party. The local rules provide that: "A party shall not at any time or cumulatively serve more than 40 interrogatories upon any other party. Each subdivision of one numbered interrogatory shall be construed as a separate interrogatory." LR 225–2(a), NDGa. As asked, Question Eleven is the equivalent of asking the defendant a separate question for each statement made by either of the plaintiffs in their depositions. Although, the Court does not have the depositions before it, it seems likely that the depositions would contain more than forty factual assertions.

the information they seek using questions more narrowly tailored to the factual disputes between the parties. Accordingly, the Court concludes that plaintiffs' motion to compel should be denied with respect to Question Eleven.

### CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Strike [9–1] is **GRANTED** in part and **DENIED** in part, defendants' Motion for Oral Argument [14–1] is **DENIED** and plaintiffs' Motion to Compel [17–1] is **DENIED**.

SO ORDERED.