**CALIPER TECHNOLOGIES CORPORATION, et al.,**
Plaintiffs,

v.

**MOLECULAR DEVICES CORPORATION, et al., Defendants.**

**No. C 02–1837 JSW.**

United States District Court,
N.D. California.

March 10, 2003.

---

Darren D. Cooke, Kurt G. Calia, Sonya D. Winner, Covington & Burling, San Francisco, CA, for Caliper Technologies Corp.

David James Miclean, Karen I. Boyd, Kurtis D. MacFerrin, Roger S. Borovoy, Fish & Richardson, P.C., Redwood City, CA, Tamara D. Fraizer, Monte Sereno, CA, for Molecular Devices Corp.

## DISCOVERY ORDER

LARSON, United States Magistrate Judge.

### Introduction

This is a suit for patent infringement. Caliper Technologies Corporation ("Caliper") is the holder of U.S. Patent Number 6,287,-774 ("the '774 patent"). The parties are competitors in the area of developing and marketing analytical tests and equipment for conducting automated biological experiments. Both companies offer competing versions of tests for certain enzymes that are appealing to potential customers in the pharmaceutical industry because the tests do not require expensive antibodies or the use of radioactive material. Caliper claims products sold by Molecular Devices Corporation ("MDC") infringe the '774 patent. MDC claims the patent is invalid and unenforceable. On October 29, 2002, Caliper amended its complaint to add claims under U.S. Patent Number 6,472,-141, ("the '141 patent"). On January 14, 2003 this case was reassigned for all proceedings to Hon. Jeffrey S. White. The parties stipulated to exchange Preliminary Patent Claims Construction Statements March 12, 2003 and to submit their Joint Claims Construction and Prehearing Statement April 1, 2003. Caliper moved for a preliminary injunction which is scheduled to be heard on May 16, 2003.

### Discovery Motions

On December 23, 2002 the parties submitted to this court a joint statement regarding their discovery disputes. The court found the matter suitable for decision without a hearing as provided by Civil Local Rule 7–1(b).

### Caliper's Motion to Compel

Caliper moves for an order compelling additional responses from MDC to the following discovery requests:

**Interrogatory 4: Identify each component of MDC's IMAP system**

■ MDC responded by producing business records, as permitted by FRCP 33(d). Caliper demands a narrative response, claiming that the documents cited by MDC provide no guidance on the physical and chemical relationships between each component, nor do they describe the process by which each IMAP system is manufactured. MDC claims the information is in the documents, that Caliper's request is vague but that the documents, including materials MDC used when it presented its technology at an industry conference, explain how the IMAP systems work.

MDC is obliged only to give the information to Caliper, not to explain it. Caliper's request is denied.

**Interrogatory 5—For each element of each claim of the '774 patent, that MDC claims is not met by any MDC IMAP system, identify any such IMAP system, and describe how each purportedly missing element is not present.**

Caliper claims MDC invalidly delayed its response until December 23, 2002, relying on Patent Local Rule 2–5. MDC says its noninfringement contentions are predicated on its claim construction position which was not due until December 23. MDC admits that it relied on the rule permitting it to wait until the parties' mutual exchange of their claim construction positions. MDC claims Caliper is trying to obtain an unfair advantage by eliciting this information from MDC without giving anything in return, defeating the in-

tent of the rules that the exchange be mutual.

The court assumes that this has been resolved.

**Request for Production No. 6—10 representative 1.0 ml samples of IMAP binding reagent obtained from twelve different lots of IMAP binding reagent.**

**Request for Production No. 7—Four representative samples of each type of IMAP system sold or offered for sale by MDC, including any product insert or literature.**

■ Caliper seeks samples of the allegedly infringing products for testing and analysis. MDC refuses, at first demanding that Caliper pay the retail value of the kits. MDC eventually agreed to give Caliper fewer samples, but at MDC's cost.

Caliper rejoins that the profit on the products is distinct from the cost to MDC of production. Caliper did not offer to pay anything, but reduced its request to two samples of each IMAP kit and two samples of each binding reagent used in those kits.

MDC responded that the kits cost about $1600 each, and that 2 of each of 18 kits retail for $57,600. MDC asks the court to restrict Caliper to "a more reasonable subset of the possible IMAP kits," without specifying what that might be. MDC says that its cost per Explorer kit is approximately $450, including $250 in royalties, per kit. MDC claims that an order of 36 kits could affect its ability to fill its customers' orders, especially at the end of a quarter. Nevertheless, MDC is willing to produce 2 of each of its 18 IMAP kits at a cost of $500 per kit.

Normally, the producing party bears the cost of production but this situation is different from production of documents which have no value to anyone other than the parties. The court sees no justification to order Caliper to pay the retail cost of the kits but at the same time MDC is being deprived of its profit for each kit. The court orders that MDC produce 2 of each of its IMAP kits and that Caliper pay $500 for each of them.

**Interrogatory No. 1—Identify by product name, common name, product number, identification number and other identifying criteria for internal or external use each MDC IMAP system that MDC has ever offered for sale, sold, made or used, and include the date first made, used, sold or offered for sale, the identity of the actual or prospective customer, the volume of sale (in the event of actual sales), the price, any agreements associated with the sale or offer for sale, and the date of any such agreement.**

Caliper claims this information is central to its claim for damages. The documents produced by MDC give no information about license agreements. MDC offered to supplement its response by January 30 to provide license agreements.

If MDC supplemented its response by January 30, 2003, then this request by Caliper is moot.

**Request for Production No. 20—All documents that constitute, refer, or relate to actual or projected prices, sales, and/or market share for any invention, method, apparatus or technology that does not use antibodies or radioactive isotopes, including but not limited to MDC's IMAP system.**

■ The parties substantially resolved their dispute with respect to request No. 20 (and No. 23)—with one exception. Caliper wants sales and sales-related documents for all MDC enzyme assay technology that does not use antibodies or radioactive isotopes. Caliper wants to know if MDC is selling other products which infringe its patent besides the IMAP kits.

MDC is only willing to produce documents related to IMAP, since IMAP is the product which Caliper claims infringes its patent. MDC claims this is an overbroad request, and that Caliper offers no explanation why "all assays that don't use antibodies or radioactive isotopes" are relevant to any claim or defense of a party in this case.

■ A party may not obtain documents in order to discover whether it has a cause of action. Caliper's request is denied for failure to show relevance.

**Request For Production No. 21—All documents (including but not limited to studies, projections, plans or analyses) evidencing, reflecting, describing, or relating to any attempt by MDC, either alone or with any other entity, to develop, produce, sell or market any device capable of using MDC's IMAP system, including but not limited to MDC's Analyst platform.**

**Request for Production No. 22—All documents that constitute, refer, or relate to actual or projected prices, sales, and/or market share for any invention, method, apparatus, or technology that is capable of using MDC's IMAP system, including but not limited to MDC's Analyst platform.**

Caliper claims this information is relevant to its damage claim, to the extent that these devices function in concert with the products at issue. *See Rite–Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1549–50 (Fed.Cir.1995) (describing the "entire market value rule" for calculating damages in patent cases); *Paper Converting Machine Co. v. Magna–Graphics Corp.,* 745 F.2d 11, 22–23 (Fed.Cir.1984) (under entire market value rule, infringer's liability may include sales of auxiliary products.) Caliper claims that it is entitled to discover information which may bolster its theory that it would have sold more units of devices that run enzyme assays had MDC not bolstered sales of its devices with its infringing IMAP assay kits. Caliper seeks to discover facts which may support its theory.

■ MDC contends that its "Analyst" is a large expensive scientific machine, like a fancy microscope, which can be used in different modes to see different kinds of results: one of these is the fluorescence polarization or "FP" assay, such as IMAP. But the Analyst is also used to read the results of other assays, including various luminescence and absorbance tests. The entire market rule applies only when patented and unpatented things are "analogous to components of a single assembly," "parts of a complete machine" or "a functional unit." *Rite–Hite Corp.,* 56 F.3d at 1550. The rule provides for recovery of damages based on the entire combination, not just the patented parts. MDC says that rule does not apply to this case. An Analyst machine and an IMAP kit together are not a product. To suggest that they are is as illogical—like a microscope and a specimen to be examined are a product—so that the maker of the specimen would be liable for the sales of microscopes.

■ The Analyst and the IMAP kits together do not qualify for consideration under the entire market rule, as described by the court in the *Rite–Hite* case, so discovery regarding the Analyst is not relevant to damages. Caliper's request is denied.

**Request for Production No. 33—All documents comprising, reflecting, describing, or relating to any analysis or evaluation of whether MDC's IMAP system infringes the '774 patent, including but not limited to all opinions of counsel.**

MDC claims it timely and appropriately objected to this request as calling for privileged information. If MDC chooses to rely upon opinion of counsel to rebut Caliper's charge of willfulness, it will provide any such opinions and related documents no later than 50 days after the court serves its claim construction ruling, as required by Patent Local Rule 3–8. MDC formally asserted this objection in its response to Caliper's motion to compel. FRCP 34, which applies to document requests, does not provide for waiver of objections as does FRCP 33, which applies to interrogatories. Courts have held that a responding party does not waive an objection raised later when, as here, a response was timely filed. *Cahela v. James D. Bernard, D.O., P.C.,* 155 F.R.D. 221 (N.D.Ga.1994).

MDC properly raised its objection and did not waive it. Caliper's request is denied.

**Request for Production No. 35—All documents that support, contradict, refer, or in any way relate to any of MDC's Affirmative Defenses or Counterclaim in MDC's First Amended Answer and Counterclaim dated June 3, 2002.**

Caliper withdrew this part of its motion upon MDC's representation that it would produce documents responsive to this request.

**Request For Production No. 36**—All documents comprising, reflecting, describing, or relating to any analysis or evaluation of the validity and/or enforceability of any claims of the '774 patent, specifically including all opinions of counsel.

MDC responds as it did to Request No. 33—it objected in its response to Caliper's motion to compel, has not waived this objection and will provide opinions of counsel if its chooses to rely on them as a defense to Caliper's charge of wilfulness, no later than 50 days after the court serves its claims construction ruling, as required by Patent Local Rule 3–8.

For the same reasons as in Request No. 33, Caliper's request is denied.

**Interrogatory No. 6**—For each claim of the '774 patent that MDC contends is invalid or unenforceable, identify each claim being contested, describe with particularity the factual basis for MDC's contentions, identify each person who has knowledge of facts and/or possesses documents supporting or otherwise relating to MDC's contention, describe the facts known to and documents possessed by that person, and identify all persons to whom those contentions have been communicated and the dates of any such communications.

Caliper states that on November 11, 2002, MDC supplemented its response to this interrogatory incorporating by reference its invalidity contentions which were served on the same day pursuant to Patent Local Rule 3–3. Caliper contends that incorporating documents by reference is not an appropriate response to an interrogatory. *Dipietro v. Jefferson Bank,* 144 F.R.D. 279, 282 (E.D.Pa. 1992)("The general rule is that answers to interrogatories should be complete in and of themselves, and should not refer to pleadings, depositions or other documents.")

MDC responds that the answers to interrogatories and invalidity contentions were due on the same date, so it filed and served them on the same date. Its supplemental response informed Caliper that people having knowledge of the factual bases of its contentions include the authors of the cited prior art. It rejects Caliper's case law as form over substance and not forbidding incorpo-

ration of a document by reference. In fact, there was no other practical way to respond. MDC's invalidity contentions provided significant factual detail, including cites to 50 articles and explanations of what portions of those articles describe which elements of Caliper's claims. MDC now also asserts that the patent-in-suit is unenforceable because of inequitable conduct and will therefore supplement its response by January 23, 2003 to include information regarding this defense.

Caliper fails to show how MDC's method of responding has deprived it of relevant information and Caliper's request is denied.

**Request for Production No. 12**—All laboratory notebooks and other documents concerning enzyme assay technology that does not use antibodies or radioactive isotopes.

**Request for Production No. 19**—All documents (including but not limited to studies, projections, plans or analyses) evidencing, reflecting, describing, or relating to any attempt by MDC, either alone or with any other entity, to develop, produce, sell or market any enzyme assay technology that does not use antibodies or radioactive isotopes, including but not limited to MDC's IMAP system.

**Request for Production No. 20**—All documents that constitute, refer, or relate to actual or projected prices, sales and/or market share for any invention, method, apparatus, or technology that implements or incorporates enzyme assay technology that does not use antibodies or radioactive isotopes, including but not limited to MDC's IMAP system.

**Request for Production No. 28**—All documents that constitute, refer, or relate to any reports or analyses of activities of Caliper or any other person or enterprise involved in or viewed as actually or potentially involved in the invention, development, and/or commercialization of products, processes, methods., or instrumentalities implementing or incorporating enzyme assay technology that does not use antibodies or radioactive isotopes.

MDC objects to these requests because Caliper offers no explanation why "all assays

that don't use antibodies or radioactive isotopes" are relevant to a claim or defense of any party in this case and therefore discoverable under FRCP 26(b)(1). MDC is willing to produce only documents related to IMAP.

Caliper seeks to preclude MDC from introducing any of a broader category of product documents at a later date.

Caliper is impending on the role of the trial judge to exclude evidence. The parties are still in the discovery phase. Caliper's request is denied.

**Interrogatory Nos. 2 and 3—Caliper withdrew this request after MDC indicated at the December 18 meeting that it would provide this information.**

### MDC's Motion to Compel

MDC requests that the court order Caliper to respond more fully to the following discovery requests:

**Interrogatory No. 7—Identify all agreements, both proposed and actual, between Caliper and any other entity relating to the licensing of any rights in the Patent-in-Suit.**

■ MDC claims that the requested agreements are relevant to the calculation of a reasonable royalty, a basis for calculating damages. *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y.1970).

Caliper says it identified and produced the only actual agreement that relates to the licensing of the patent-in-suit and informed MDC that it was not aware of any other agreements. The only other information called for by this request relates to broad collaborations or acquisition proposals that potentially encompass extensive rights to the hundreds of patents and patent applications in Caliper's patent estate (most of which have little or nothing to do with the technology in the '774 patent.) These would not be relevant to damages in this case. Caliper is willing to produce all documents relating to any actual licenses to the patents-in-suit as well as any documents relating to any proposed license once either of the patents in suit are mentioned specifically. Caliper objects that anything more would be privileged and not relevant.

MDC fails to show the relevance of license agreements for Caliper's other patents. MDC's request is denied.

**Request for Production No. 4—All patents or patent applications (foreign or domestic, pending, abandoned, or issued) owned or controlled by Caliper that refer to or relate to inventions involving any fluorescence polarization assay method, system or apparatus.**

MDC asserts that the requested patents and patent applications are relevant at least to MDC's defenses that the patent-in-suit is not infringed. The request includes pending and abandoned patent applications that are related to the patent-in-suit. Many courts have concluded that such applications are relevant because they "may contain information or admissions that clarify, define or interpret the claims of the patent in suit." *Tristrata Tech. v. Neoteric Cosmetics*, 35 F.Supp.2d 370, 372 (D.Del.1998) (citations omitted); *see also, Central Sprinkler Co. v. Grinnell Corp.*, 897 F.Supp. 225, 229–30 (E.D.Pa.1995) ("pending or abandoned applications and associated materials are relevant to this action" and their importance outweighs the patentee's interest in their confidentiality). For example, Caliper's application 20020127591, filed March 5, 2002, describes technology very similar to that in suit (intracellular binding reactions using fluorescence polarization) and has the same inventor as the patent-in-suit. This and any similar application will also shed light on the technology claimed in the patent-in-suit as well as the language used to claim it. Assays that use fluorescence polarization are relevant because this is what the '774 patent describes. MDC is willing to limit this request to certain kinds of assays which use fluorescence polarization to monitor bindings reactions or antibody activity. MDC merely seeks initial discovery of the applications themselves.

Caliper agrees to produce all patents and pending patent applications (U.S. and foreign) that in any way relate to the invention of the '774 patent, including but not limited to those that refer to "fluorescence polarization." Caliper agrees to MDC's proposed compromise that Caliper produce only those

patents and patent applications related to fluorescence polarization to monitor binding reactions or enzyme activity. However, Caliper would find production of these documents burdensome. Despite the burden, Caliper is willing to produce all published U.S. patents and patent application sought by MDC, with the exception of unpublished patent applications. Caliper finds these to be highly proprietary.

The secrecy of pending and abandoned U.S. patent applications should be preserved whenever possible. *Avery Dennison Corp. v. UCB SA,* 1996 U.S. Dist. LEXIS 16070 (N.D.Ill.1996); *Central Sprinkler Corp., Id.* at 227. Courts apply a balancing test to determine whether patent applications should be disclosed in litigation and do not require disclosure "if the need to examine the file wrapper is less than the interest served in protecting secrecy, or if confidentiality could not be effectively protected by some other means." *Ideal Toy Corp. v. Tyco Indus., Inc.,* 478 F.Supp. 1191, 1193 (D.Del. 1979). Caliper contends that MDC has not established the relevance of these documents and since the parties are competitors, the documents should not be produced. Caliper is willing to provide the court with affidavits regarding the burden of production.

A producing party is obligated to show, by affidavits or other evidence, the specific nature of the burden imposed. *Roesberg v. Johns–Manville Corp.,* 85 F.R.D. 292, 298 (E.D.Pa.1980). Caliper requested an opportunity to submit affidavits or to be heard in open court. There is no reason that evidence of burden could not have been provided to the court in the parties' joint statement. Caliper failed to show burden and the confidentiality of the documents may be shielded by a protective order, specifically one with a provision for access limited to outside counsel and experts. MDC's request is granted, as limited.

**Request for Production No. 32—All publications, including without limitation internal technical memoranda, authored by any inventor of the Patent–in–Suit.**

MDC believes this is a narrowly tailored request, relevant to MDC's defenses that the patent-in-suit is unenforceable and not in-fringed and its defense that the asserted claims are invalid (e.g., because the claimed invention was obvious or previously invented, 35 U.S.C. § 102 and 103).

Caliper is willing to produce only those publications related to the patent-in-suit. Caliper claims MDC's proposed limitation to fluorescence polarization is no limitation, because it is such a basic biological technique with broad application. Production would also be burdensome to Caliper, since it no longer employs the inventor and does not maintain a file of his publications, and searching its files would be burdensome. Caliper offers to provide the court with affidavits relating to the degree of burden.

The mere failure of a party to maintain records does not excuse it from producing relevant information. *Kozlowski v. Sears, Roebuck & Co.,* 73 F.R.D. 73, 76 (D.Mass.1976) (court ordered corporate defendant in personal injury suit by child injured by flammable pajamas to produce information regarding similar accidents involving its product, despite defendant's objection that it did not maintain such records). Caliper should know that if it sues for patent infringement, then defendants are going to request the publications of the inventor of Caliper's patent, whether or not Caliper still employs him. Caliper failed to show burden. MDC's request is granted.

**Request for Production No. 50—All documents and things referring to, relating to, or comprising any opinions regarding infringement, validity, or enforceability of the Patent–in–Suit.**

**Request for Production No. 51—All documents and things referring to, relating to, or comprising any opinion regarding patentability of any alleged invention claimed, disclosed, or described in the Patent–in–Suit.**

MDC believes these documents are relevant to its third affirmative defense, that Caliper asserted the '774 patent knowing that it contained claims that are not infringed. Some documents may not be privileged, some maybe. Even if some are privileged,

MDC claims it is entitled to enough information to assess the applicability of the privilege, for example a privilege log. MDC agrees to exclusion from privilege logs of documents created after the date of filing this lawsuit but objects to exclusion of documents created prior to filing, if they relate to the litigation. MDC warns that it is impossible to assess the validity of a claim of privilege without a log. A "party asserting a privilege must make a prima facie showing that the privilege protects the information it intends to withhold," and a privilege log is one way (if not the only way short of *in camera* review) to do this. *In re Imperial Corp. of America*, 174 F.R.D. 475, 477–78 (S.D.Cal.1997) (*citing In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir.1992)). It asks Caliper to identify the opinions of counsel. MDC is willing to accept, in lieu of a privilege log, information such as described in *Securities and Exchange Commission v. Thrasher*, 1996 WL 125661, *1, 1996 U.S.Dist. LEXIS 3327, *3–4 (S.D.N.Y.1996).

Caliper believes only a small subset of documents sought by request No. 50 would be relevant, namely those opinions relating to whether MDC is infringing Caliper's patent. MDC offer no authority that opinions obtained by the *patentee* about its own patent could be relevant. Caliper objects to producing even a log of such opinions, on the basis that the log itself may reveal privileged information. Caliper intends to exclude from a privilege log any documents produced prior to the filing of the complaint in this case. Caliper also proposes to exclude from any privilege log all documents created by outside counsel as part of this litigation. Caliper contends it is unduly burdensome to require its outside counsel to log privileged documents prepared in anticipation of this litigation. Caliper contends that MDC's proposal would require only Caliper to log the work product of its litigation counsel and withdraws its offer to set the filing date of the Complaint as the cut-off for logging such material. Caliper contends that the requirements of FRCP 26(b)(5) are flexible. *Jackson v. County of Sacramento*, 175 F.R.D. 653, 656 (E.D.Cal.1997). Caliper is willing to provide nothing beyond the requirements of the *Thrasher* case.

Both sides agree to a privilege log with specifications as ordered by the court in the *Thrasher* case. This court therefore orders Caliper to produce, in lieu of a privilege log, all responsive information as described in *Securities and Exchange Commission v. Thrasher*, 1996 WL 125661, *2 (S.D.N.Y. 1996) as follows: (1) identification of the time period encompassed by the withheld documents; (2) a list of the individuals who were authors or addressees or were copied on the documents; (3) a representation by counsel as to whether all of the documents either (a) were prepared to assist in anticipated or pending litigation or (b) contain information reflecting communications between (i) counsel or counsel's representatives and (ii) the client or the client's representatives, for the purpose of facilitating the rendition of legal services to the client. *Id.*

All production is due within fourteen calendar days of the receipt of this court's order.

IT IS SO ORDERED.