**GREAT LAKES CARBON CORPORATION**

v.

**CONTINENTAL OIL COMPANY, Lake Charles Chemical Corporation and Union Carbide Corporation.**

**No. 6946.**

United States District Court
W. D. Louisiana,
Lake Charles Division.

Oct. 27, 1958.

S. W. Plauche, Jr., Lake Charles, La., Earl Babcock, James F. Weller, Jefferson D. Giller, Duncan, Okl., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., White & Case, New York City, for plaintiffs.

Cullen R. Liskow and B. H. Hines, Lake Charles, La., Carlson, Pitzner, Hubbard & Wolfe, Chicago, Ill., Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendants.

HUNTER, District Judge.

The complaint, in essence, alleges:

(1) Patent infringement.

(2) Misappropriation of plaintiff's trade secrets.

The case was filed because Continental entered into an agreement with Union to produce petroleum coke, for Union, in its Lake Charles refinery. It is the coking operation conducted by Continental which plaintiff claims infringes its patent and embodies the alleged misappropriation of trade secrets.

Continental has voluntarily opened its Lake Charles plant to inspection by plaintiff's engineers, attorneys, and experts so

that they might have an opportunity to observe and note just how the coke is made. Beginning shortly before midnight last Monday (October 20, 1958) plaintiff's attorneys, four of its engineers, and an expert employed by plaintiff, were given access to the plant. The record reveals that while defendants deny vigorously each of the plaintiff's charges, they have voluntarily and without the necessity of a motion or court order, honored every informal request for discovery which the plaintiff has made, except as to the production of the patent application which is the subject matter of the motion now before the court.

This motion, under Fed.Rules Civ. Proc. rule 34, 28 U.S.C.A., for discovery of a patent application was brought by plaintiff when it learned that Hackley, the head of the patent department of the Continental Oil Company, had filed a patent application claiming a patentable improvement in the process of producing petroleum coke. Defendants assert by brief and in oral argument that this patentable improvement has been embodied in the operation of the coking process employed at Continental's Lake Charles refinery where plaintiff's representatives are now maintaining 24-hour vigil.

Defendants argue that whatever the improvement may be, the plaintiff has now seen it; that plaintiff needs nothing more and should proceed with the prosecution of its complaint. On the other hand, plaintiff thinks that it is very material to know what Roy Hackley and the Continental Oil Company have told the patent office about this process, and accordingly have filed this motion seeking an order from this court requiring Continental Oil to produce for inspection a copy of the complete application, for patent on the invention of Roy C. Hackley, Jr., directed to certain alleged improvements employed in the process of making No. 1 coke by the defendant at Lake Charles, Louisiana. In answer to defendants' argument that they are being shown everything, plaintiff asserts that it really does not know what is going on at the Lake Charles plant, even though it has been there inspecting it with its experts. Plaintiff says that there is only one man who knows what is going on, and that is Roy C. Hackley, who is now in Europe, and it orally states that in its opinion, Hackley has put into operation a plan of procedure in Lake Charles in a deliberate attempt to conceal what the defendants are doing. (See Tr. 29.)

It is not easy to determine from the cases what "good cause" is. A great deal of discretion rests with the Court. In the motion itself the only reason set forth as a basis for the production of the patent application is that in light of the fact that plaintiff is in the process of inspecting Continental's plant (and taking depositions), and since concededly the process being used there embodies the process described in the patent application that:

"* * * plaintiff needs to compare the actual process with that described in the application to determine if this is so."

Amplifying on this in argument, plaintiff asserts that the only way that they can find out what is really going on in Lake Charles is to get this application for a patent, which must disclose the details of this process, and that if the plaintiff had the application before it, which recites what the process is supposed to be and what these improvements are supposed to be, that would put them in a position to properly examine the witnesses as to the procedure, and it would permit them to get a complete picture of what this Lake Charles process is, and that in this way and only in this way can they obtain this information. They stoutly assert that they do not think they are getting the information now. On the other hand, defendant charges that this motion is nothing but a subterfuge (Tr. 39), plain and simple, to get at this application; that what plaintiff really wants to know is how far the patent application goes in claiming

new rights for Continental. This Court is not passing on these charges and countercharges, but does point out that the issue of infringement in no way depends on what may be contained in the application. The process which is employed in the Lake Charles Refinery is the issue.

In oral argument plaintiff urged that it believes an inspection of the patent application might show an admission against interest by Continental. Even if this is true, we feel that such an admission would have little probative value on the issue of patentability (Zenith Radio Corporation v. Dictograph Products Co., D.C.Del.1947, 6 F.R.D. 597).

Applications for patents are not public documents until they develop into patents. They are secret documents in the Office of the Commissioner. The United States Patent Office Rules provide specifically that pending applications are to be preserved in secrecy. There is, however, in the decisions of the courts, abundant authority for directing disclosure in pending applications under certain conditions. Nevertheless, the occasional necessity for directing disclosure should not blind us to the danger of such a measure or entice us into an unqualified sanction of such a demand. Especially is this true in instances like the one which now confronts us, where the litigants are fierce competitors in the specific field.

As the Court appreciates this controversy at this stage of the proceedings, Great Lakes ostensibly wants to see the patent application because in their opinion it would be a complete disclosure of what is going on in the Lake Charles plant, and would simplify their task of ascertaining just what is going on. The best way for plaintiff to ascertain the facts of the actual practice in the Lake Charles refinery is the method now being used by them, namely, a complete 24-hour vigil. We are all aware of the obvious fact that patent applications can disclose a lot of things—sometimes the same and sometimes different from the actual process being used.

While the defendant has a legitimate interest in the protection of its patent application, that interest must be balanced with the right of the plaintiff to discover the full truth. Disclosure should be ordered where the issues cannot be fairly adjudicated without it. Here, the information contained in the application might be helpful to plaintiff, but it is certainly doubtful as to whether the probative value of that information is strong enough to justify an invasion of Continental's right to secrecy.

This Court has the power in the interest of justice to control the degree of discovery of information by a weighing of the respective rights; that is, on the one hand, the right of a plaintiff to a liberal examination, and on the other the right of a defendant to be protected when confidential information is involved. Equity and fairness here require that the motion be denied. It is. In so ruling, it should be distinctly understood that we are not closing the door to the eventual possibility of ordering the production of the patent application. We will hold this question off until we reach pre-trial, and then, if it appears that the information on this patent application is really critical evidence, then and in that case we will find a way to take a look at it.