**IDEAL TOY CORPORATION, Plaintiff,**

v.

**TYCO INDUSTRIES, INC., Defendant.**

**Civ. A. No. 78–388.**

United States District Court,
D. Delaware.

Oct. 30, 1979.

Walter L. Pepperman, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff; Lewis H. Eslinger, of Curtis, Morris & Safford, P. C., New York City, of counsel.

Nathan Bakalar and James S. Green, of Connolly, Bove & Lodge, Wilmington, Del., for defendant; and Ronald L. Panitch and Roberta L. Jacobs, of Seidel, Gonda, Goldhammer & Panitch, P. C., Philadelphia, Pa., of counsel.

## OPINION

MURRAY M. SCHWARTZ, District Judge:

Tyco Industries, Inc., the defendant in a patent infringement action brought by the Ideal Toy Corporation, has moved for reconsideration of a ruling from the bench denying portions of Tyco's motion to compel discovery. Tyco's original motion to compel concerned, among other things, a demand in its interrogatories that Ideal produce the file wrappers of two abandoned and one pending patent application.[1]

In support of its motion for reconsideration, Tyco asserts a need to inspect the file wrappers to determine if they contain prior art that would reflect adversely on the validity of the patents in suit, and further, to search them for admissions made in the prosecution of these applications that now could be used to attack the validity and scope of the claims of the patents in suit and ultimately their validity. Further, Tyco alleges that the applications sought to be discovered, the first of which was filed over a year before the application date of at least one of the patents in suit, contains claims identical to those in the patents originally in this litigation.[2]

■ Tyco correctly argues that although the Patent and Trademark Office is required to keep applications for patents con-

---

1. The applications in question are Nos. 632,471; 781,546; and 878,474. No. 878,474 is a continuation-in-part of No. 781,546, which in turn is a continuation-in-part of No. 632,471. Applications 632,471 and 781,546 are now abandoned, while 878,474 is pending.

2. At this juncture in the proceedings, only two patents remain in the suit: 4,078,799 and 4,141,552.

fidential and is allowed to divulge no information concerning the same except under limited circumstances not applicable here, 35 U.S.C. § 122 (1976), that prohibition is not applicable to the United States District Court. The matter is not so straight-forward as Tyco suggests, for the absence of a statutory prohibition does not mean there is an automatic entitlement to abandoned and pending file wrappers. Rather, the question of whether disclosure should be ordered requires a balancing of competing policy and litigation interests. Disclosure of file wrappers of pending and abandoned applications should be ordered when the necessity for disclosure outweighs the desirability of maintaining the secrecy of data in the file wrapper, especially if protective measures can be fashioned to minimize the intrusion or to prevent excessive dissemination of the revealed material. Conversely, if the need to examine the file wrapper is less than the interest served in protecting secrecy, or if confidentiality could not be effectively protected by other means, disclosure should not be ordered. An exegesis of the relevant authority demonstrates how courts have applied this standard.[3]

In *Carrier Manufacturing Co. v. Rex Chainbelt, Inc.* 281 F.Supp. 717 (E.D.Wisc. 1968), the plaintiff sought to discover whether the defendant had filed any patent applications on the disputed subject matter, and if so, on what dates. The plaintiff did not, however, seek to discover the contents of these applications or the applications themselves. The Court held that this information was "relevant" and should be disclosed. *Id.* at 718–19.

In a similar vein, though it deferred action on the request for a protective order, the Court in *Deering Milliken Research Corp. v. Tex-Elastic Corp.*, 320 F.Supp. 806 (D.S.C.1970), suggested that it would not "require a party to answer whether it has filed or abandoned a patent application . . . unless it is clear that such information is materially connected with the instant litigation." *Id.* at 810.

The discovery request in *Scovill Manufacturing Co. v. Sunbeam Corp.*, 61 F.R.D. 598 (D.Del.1973), was whether Scovill had conducted any patentability studies or filed any patent applications regarding the matter in question, and if so, to identify the studies and applications. This Court, applying a standard of "relevancy," ordered disclosure of this information, stating that relevancy was construed extremely liberally in the context of pretrial discovery, and that "the documents sought [were] within permissible limits" of relevancy. The Court did, however, afford extra protection to Scovill's interest in the secrecy of its applications by limiting disclosure to Sunbeam's trial counsel only, "to prevent its improper use by Sunbeam." *Id.* at 602.

This Court has also countenanced a more serious breach of secrecy when balanced by a protective order. In *Celanese Corp. v. E. I. duPont de Nemours & Co.*, 58 F.R.D. 606 (D.Del.1973), the Court required compliance with a request for the production of "any abandoned U.S. patent applications" filed during a certain period with respect to specified subject matter, but imposed a protective order limiting review of the documents to petitioners' counsel.

The existence of a protective order coupled with a prior voluntary waiver of secrecy led one Court to require production of patent applications. In *Crown Machine & Tool Co. v. KVP–Sutherland Paper Co.*, 244 F.Supp. 543 (N.D.Cal.1965), the plaintiffs had already allowed the defendant's counsel to inspect the documents in question. The Court granted the defendant's request for production of these items for copying and use as evidence at trial, but imposed two conditions on disclosure: that the documents be produced to the Court in camera for a determination of their relevancy, and that the defendant's counsel receive the information as officers of the court and not reveal it to the defendant or anyone else. *Id.* at 544.

---

3. The list of cases discussed is not exhaustive, but rather constitutes a representative sample in which the issue has been discussed.

When secrecy had been voluntarily breached but revealing of the content of a defendant's file wrapper would not have materially aided the determination whether the defendant had infringed the plaintiff's process patent, disclosure was not compelled. In *Great Lakes Carbon Corp. v. Continental Oil Co.*, 23 F.R.D. 33 (W.D.La. 1958), the defendant had voluntarily opened its plant to inspection by the plaintiff's engineers and attorneys, who consequently had the opportunity to observe firsthand the allegedly infringing process. Plaintiff nonetheless sought defendant's pending patent applications which showed improvements presumably embodied in the plant under surveillance by the plaintiff's personnel. Declining to order production, the Court stated:

> While the defendant has a legitimate interest in the protection of its patent application, that interest must be balanced with the right of the plaintiff to discover the full truth. Disclosure should be ordered where the issues cannot be fairly adjudicated without it. Here, the information contained in the application might be helpful to plaintiff, but it is certainly doubtful as to whether the probative value of that information is strong enough to justify an invasion of Continental's right to secrecy.

*Id.* at 35.

Similarly, in *Zenith Radio Corp. v. Dictograph Products Co., Inc.*, 6 F.R.D. 597, 598 (D.Del.1947), the defendant sought to obtain copies of plaintiff's rejected patent applications or permission to obtain them from the Patent Office. The defendant wanted to inspect these applications in the hope that plaintiff had taken a contrary position as to validity or had admitted validity of defendant's patent during the prosecution of the rejected applications. This Court held that such admissions would have little probative value in construing the validity of the patent in suit, and refused to compel disclosure.

Finally, in *Struthers Scientific & International Corp. v. General Foods Corp.*, 45 F.R.D. 375 (S.D.Tex.1968), the Court, although acknowledging that 35 U.S.C. § 122 casts no "impenetrable cloak of secrecy around patent applications," stated that such applications should be disclosed only when they have "a direct bearing on the issues being litigated." *Id.* at 381. The Court held that on the facts of that case the information that might be garnered was at best tangential, and on balance the "invasion of defendant's privacy" was not justified. *Id.* àt 382.

Two cases commonly cited in this area, both allowing disclosure, do not dictate that the weighing of interests outlined above is inappropriate. In *James B. Clow & Sons, Inc. v. U.S. Pipe & Foundry Co.*, 313 F.2d 46 (5th Cir. 1963), the appellant wished to prove that the first inventors were not the assignors of the appellee's patent, but rather a foreign inventor who had filed an American patent application and then withdrawn it pursuant to a settlement agreement. The Court of Appeals held that the foreign inventor's application should be produced if found relevant on remand. But the relevancy of the application could not be determined until after examination of an allegedly similar foreign patent. Further, the issue of who was the first inventor was obviously a "fundamental issue." *See Dresser Indus. Inc. v. Smith-Blair, Inc.*, 322 F.2d 878, 891 (9th Cir. 1963). In the other case, *Britt Tech Corp. v. L & A Products, Inc.*, 223 F.Supp. 126 (D.Minn.1963), the Court's approval of the disclosure of the patent applications was perfunctory; none of the circumstances surrounding the motion for disclosure was set forth. The Court stated merely that "on balance plaintiff's arguments make more sense." *Id.* at 127.

■ Examination of the facts of the instant case reveals that this case more closely resembles those in which the motion to compel was denied than those in which it was granted. Tyco has not made a convincing showing of the necessity that it obtain the requested patent application files. Tyco alleges that various claims in the applications sought to be divulged are identical to those in applications the descendants of which matured into patent number 4,141,553 ("the '553 patent").

Were Tyco's allegations true, an application containing identical claims would have been filed over a year prior to the first application in the series that matured into the '553 patent. This would raise serious questions of priority, which alone would weigh heavily in favor of disclosure. The '553 patent, however, has been withdrawn from this litigation. Tyco in its brief acknowledges the fact of withdrawal, but not its significance to the relevancy to its application for the pending and abandoned applications. At least insofar as the '553 patent is concerned, the withdrawal would seem to abrogate totally Tyco's need to see the file wrappers.

■ Tyco's assertion that it needs to search the file wrappers for admissions that could tend to invalidate the remaining patents in suit is not sufficient to pierce the secrecy inherent in patent proceedings. This Court long ago indicated that the probative value of such admissions generally does not outweigh the intrusion into matters generally kept secret. *See Zenith Radio Corp. v. Dictograph Products Co.,* 6 F.R.D. at 598. Further, Tyco already has access to some of the information it now seeks. It has received copies of the patent applications themselves in Nos. 632,471 and 781,546. These applications, however, were given to Tyco not by Ideal but by Ideal's assignors, the inventors. Thus no question of waiver by Ideal of the right to secrecy arises. *Compare Crown Machine,* 244 F.Supp. at 543, *with Great Lakes Carbon,* 23 F.R.D. at 34.

Tyco also alleges that certain concepts in patent No. 4,141,552 ("the '552 patent") are similar to those in the file wrappers sought. Such allegations do carry some weight in favor of disclosure.

Weighing heavily against disclosure is the fact that Tyco's counsel in this litigation is also actively engaged in the prosecution of other Tyco applications embracing the same subject matter (slotless racing cars) in the Patent and Trademark Office.[4] Ideal contends that revelation of the information in the application files, even under protective order limiting disclosure to counsel, would prejudice Ideal in the future by informing Tyco's counsel of developing concepts in the area which Tyco could utilize in the prosecution of its own patents.

■ The Court has found no case, nor has any been brought to its attention, that considers the problem of revealing information contained in patent applications to attorneys actively engaged in the prosecution of patents for a litigating competitor. Since the '553 patent is no longer in the case, the allegations that identical claims were filed earlier cannot be used to counterbalance the adverse consequences of breach of secrecy inherent in compelling disclosure to Tyco's counsel. Mere similarity of broad concepts in a pending application and issued patents, as is alleged with respect to the '552 patent, does not warrant compelled disclosure of protected file wrappers.

The danger from the revelation of inadequately protected information outweighs the need asserted by Tyco for that information. An order will be entered denying the motion for reconsideration.

---

4. Transcript of Hearing, Docket No. 88 at 31–32.