**CENTRAL SPRINKLER COMPANY**

v.

**GRINNELL CORPORATION.**

**CENTRAL SPRINKLER COMPANY**

v.

**The VIKING CORPORATION
and Supply Network, Inc.**

**Civ. A. Nos. 94–CV–7482, 94–CV–7483.**

United States District Court,
E.D. Pennsylvania.

Sept. 8, 1995.

Eric Kraeutler, Michelle T. MacDonald, Morgan, Lewis & Bockius, Philadelphia, PA, for plaintiff.

Peter J. Deeb, Frey, Petrakis & Deeb, Philadelphia, PA, Robert E. Rigby, Jr., Fish & Richardson, P.C., Boston, MA, for Grinnell Corporation.

Lewis F. Gould, Jr., Joseph A. Battipaglia, Eckert, Seamans, Cherin & Mellott, Philadelphia, PA, Daniel Van Dyke, Terence J. Linn, Price, Heneveld, Cooper, Dewitt and Litton, Grand Rapids, MI, for Viking Corporation and New Supply Inc.

## MEMORANDUM

JOYNER, District Judge.

Today we resolve parallel motions filed in two separate patent infringement cases. Plaintiff Central Sprinkler Company is a manufacturer and seller of automatic fire sprinklers and sprinkler systems. It owns a patent for a product called the Extended Coverage Ceiling Sprinkler and System, numbered 5,366,022 (" '022 Patent"). Central has brought three lawsuits alleging that the various Defendants are infringing the '022 Patent by manufacturing, using and selling sprinklers. The lawsuits also allege that the ceiling sprinkler industry is fiercely competitive and that together, the Defendants and Plaintiff account for at least 80% of the relevant market. The Defendant in the first lawsuit, Action 94–7481, but not involved in the instant discovery dispute, is the Reliable Automatic Sprinkler Co., Inc. The Defendant in Action 94–7482 is Grinnell Corporation and the Defendants in 94–7483 are Viking Corporation and Supply Network, Inc (collectively, "Viking").[1]

In February, 1995, Viking served Central with Interrogatories and a request for Production of Documents. Two of those Document Requests, numbers 30 and 31, are addressed in this Memorandum. In April, 1995, Grinnell served Central with Interrogatories and a Request for Production of Documents. Interrogatory numbers 4, 20, 21 and 22 are addressed here, as well as Document Request numbers 22 and 45. Grinnell has filed a Motion for a Protective Order to not respond to those discovery requests. Viking and Grinnell responded to Central's Motion and in addition, filed their own Motions to

---

1. On April 11, 1995, this Court denied Central's motion to consolidate the three cases.

Compel covering the same discovery requests.

All of the discovery requests at issue concern Central's applications for patents that are pending or that Central has abandoned before the United States Patent and Trademark Office ("PTO"). These applications are of two natures, continuing applications and continuing in part applications ("CIP"). A continuing application is one that makes explicit a claim that was inherent in a previously filed application. It contains no new information. *Fox Indus., Inc. v. Structural Preservation Sys.,* 6 U.S.P.Q.2d 1577, 1590, 1988 WL 18937 (D.Md.1988). A CIP application is based on a previously filed application but includes new material to support new claims. *Id.*

In 1991, Central applied for a patent, application number 07/769,917 ("'917 Application"). Later, it filed a continuing application, application number 07/875,928 ("'928 Application"), based on the '917 Application. Subsequently, Central abandoned the '917 Application in favor of the '928 Application, which ultimately matured into the patent in suit in these actions, the '022 Patent. Viking and Grinnell seek disclosure of all documents and things relating to, mentioning or comprising any pending or abandoned continuing-type applications based on both the '917 Application and the '928 Application. Central objects to the discovery requests on the ground that pending applications are highly sensitive and should be rarely disclosed. Central concedes that it has at least one still-pending continuing-type application based on either the '917 or '928 Applications, but has not disclosed whether it is a continuing application or CIP application. There may also be abandoned applications that were based on the '917 or '928 Applications.

Courts agree that the secrecy of applications should be preserved when possible. *Fischer Imaging Corp. v. Lorad Corp.,* 148 F.R.D. 273, 274 (D.Colo.1993). In part, this is based on a Congressional directive that the PTO must keep patent applications confidential unless disclosure is permitted by the applicant. *Id.;* 35 U.S.C. § 122. Although this directive is not binding on the courts, it is respected in them. *Fischer,* 148 F.R.D. at 274 (citing cases). Accordingly, courts generally apply a balancing test to decide whether to compel discovery of pending or abandoned applications. *Id.; Ideal Toy Corp. v. Tyco Indus., Inc.,* 478 F.Supp. 1191, 1193 (D.Del.1979). Courts weigh the requesting party's interest in the materials against the objector's interest in secrecy. *Id.* Direct relevancy weighs on disclosure's side, whereas direct competition in the relevant marketplace by the parties weighs on secrecy's side. *Id.* Courts also ask whether other sources will provide sufficient information to obviate the need for disclosure. *Id.*

Defendants [2] argue that they need the applications for several reasons. First, one of the issues in these cases is the scope of the '022 Patent. Defendants assert that positions taken in an original application as well as continuing applications can be used to define the parameters of a patent's coverage. *Haynes Int'l v. Jessop Steel,* 8 F.3d 1573, 1579 (Fed.Cir.1993), *clarified,* 15 F.3d 1076 (Fed.Cir.1994); *Jonsson v. Stanley Works,* 903 F.2d 812, 818 (Fed.Cir.1990). For this reason, they argue, any determination as to the scope of the '022 Patent should incorporate any limitations, if any, that Central or the PTO has placed on it in the patent's prosecution history. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 980 (Fed.Cir. 1995), *pet. for cert. filed,* July 3, 1995.

Second, Central has indicated that it might use the doctrine of equivalents to gain relief from the alleged infringement. This equitable doctrine is designed to protect patent holders whose patents are not literally infringed. *Texas Instruments, Inc. v. United States Int'l Trade Comm.,* 988 F.2d 1165, 1173 (Fed.Cir.1993). The doctrine holds that if the infringing product is so close to the patented product that it could have been included in the same patent, then it is equivalent, and therefore, protected. *Wilson Sporting Goods v. David Geoffrey & Assoc.,*

---

2. Viking and Grinnell have filed separate and distinct Memoranda in support of their positions. Their arguments and legal support are largely the same, however, so for convenience in this discussion we refer to them jointly as Defendants.

904 F.2d 677, 683 (Fed.Cir.1990). A limitation on the doctrine of equivalents is called "file wrapper estoppel" or "prosecution history estoppel." *Texas Instruments*, 988 F.2d at 1173. Courts look at a patent's prosecution history to determine whether the allegedly equivalent product was ever *raised and relinquished* by the patent holder or *raised and rejected* by the PTO examiner during the patent's prosecution history. *Id.* If it was, then the patent holder is estopped from "obtain[ing], through litigation, coverage of subject matter" lost during prosecution. *Haynes*, 8 F.3d at 1577. Because prosecution history estoppel is always at issue in a doctrine of equivalents case, Defendants argue, they need the applications to get a full understanding of the prosecution history behind the '022 Patent.

Third, Defendants argue that they have cited prior art to Central that was not before the PTO when the '917 and '928 Applications were made. Central is under a duty to report this prior art to the PTO as part of its continuing applications. Defendants assert that Central's comments relating to this prior art, as well as the PTO examiner's comments, rejections or objections are directly relevant to this action.

Central makes several arguments why its applications should remain secret. First, it asserts that it and Defendants are direct competitors in the area of ceiling sprinkler systems. Because of this, the danger is great that its competitors may learn not only technical information, but also product development strategies and plans for commercial exploitation. Second, Central argues that Defendants' lawyers in this action are Defendants' regular patent counsel, and so information they learn in this case, even under the terms of the Confidentiality Orders in place in these actions and with all best intentions of those lawyers, would remain in the lawyers' heads for future litigation and product development. *Ideal Toy*, 478 F.Supp. at 1195.[3] Third, Central argues that the Defendants have not demonstrated that they have any need for the applications. Because the burden is on the requester to show need, according to Central, this failure is fatal to Defendants' position. Moreover, Defendants have not specifically identified the information they expect to find in the applications. Central argues that any request for the applications is therefore just a fishing expedition and should not be allowed.

Much of Central's arguments are based on the understanding that statements made in later applications can have no bearing on already issued patents. This argument relies on the premise that any assertions made in continuing applications are only relevant to the patent that application is seeking. Central asserts that patent applications, in effect, only have forward effect, and can never act backwards to affect an already issued patent. Central distinguishes *Jonsson* and *Haynes*, cited by Defendants, by pointing out that neither case involved pending applications, but rather, applications for already issued patents. Also, it argues that *Haynes* is irrelevant because it did not involve claim construction, but estoppel.

Central asserts that because it has not been determined whether the doctrine of equivalents applies to the facts of this case, that discovery on that claim is premature. Central argues further that prosecution history estoppel does not require disclosure of pending applications. First, it points out

---

**3.** Central relies heavily on *Ideal Toy*. This case involved a situation similar to this one, and the Court held that pending applications should not be disclosed. It is possible to read *Ideal Toy*, though, as limited to an analysis of whether disclosure is appropriate only when confidentiality orders or other prophylactic measures cannot work to keep the secret information from the public, not the lawyers. The Court wrote:

> Disclosure of file wrappers of pending and abandoned applications *should* be ordered when the necessity for disclosure outweighs the desirability of maintaining the secrecy of data in the file wrapper, *especially if protective*

*measures can be fashioned to minimize the intrusion or to prevent excessive dissemination of the revealed material.* Conversely, if the need to examine the file wrapper is less than the interest served in protecting secrecy, *or if confidentiality could not be effectively protected by other means, disclosure should not be ordered.* 478 F.Supp. at 1193. If read this way, *Ideal Toy* does not support Central's position because these actions have Confidentiality Orders in place. These Orders will, at the least, "prevent excessive dissemination of the revealed material," and will limit the access the parties themselves will have to the information. *Id.*

that one rationale behind estoppel is that the PTO's records, being public, can reasonably serve as guides to competitors to know where they can innovate. Because patent applications are confidential within the PTO, they cannot be relied upon by the public, and are therefore, not relevant to an estoppel analysis. A second rationale of prosecution history estoppel also supports secrecy in this case, Central argues. This is the theory of exhaustion of administrative remedies. The idea is that if a party released certain claims before the PTO could address them, the party would not have exhausted its administrative review and should not raise those untested claims before a court in a doctrine of equivalents case.

█ Given the persuasive arguments on all sides, we turn now to balance the interests of the parties. First, several factors support granting the motion for a Protective Order. Plaintiff and Defendants are direct competitors, and their counsel in this litigation are Defendants' usual patent counsel. Viking supplies this Court with affidavits of its patent counsel that they have not litigated patent actions for Viking and have no present intention of doing so. Central rightly points out, however, that this does not preclude them from litigating patent claims in the future.

Many of Central's other arguments in support of its position do not weigh in its favor, however. First, it is unimportant that Defendants cannot point to specific evidence in the applications. Defendants do not have the applications and so must rely on supposition of what might be in them. Second, so long as Central maintains its alternative claim under the doctrine of equivalents, discovery on that claim is not premature. Third, we do not agree with Central's argument that continuing applications can never effect the scope of an issued patent. It is possible that a PTO examiner might deny a particular claim in a CIP application by finding that the allegedly new claim was included within the original application. In that situation, the scope of the issued patent has just been defined, in the course of a different patent's prosecution. *See e.g., Texas Instruments,* 988 F.2d at 1174; *Hormone Research Found.*

*v. Genentech, Inc.,* 904 F.2d 1558, 1564 & n. 9 (Fed.Cir.1990); *B. Braun Med. Inc. v. Abbott Labs.,* 155 F.R.D. 525, 528 (E.D.Pa.1994); *Bott v. Four Star Corp.,* 675 F.Supp. 1069, 1075 (E.D.Mich.1987) ("Information as to pending patent applications is important in patent litigation; such applications may contain admissions"); *Scovill Mfg. Co. v. Sunbeam Corp.,* 61 F.R.D. 598, 602 (D.Del.1973).

The most important factor in support of disclosure is that the requests seek information on patents that are directly relevant to this action. Even the cases Plaintiff cites recognize that direct relevancy "tips the scale in favor of disclosure." *Fischer,* 148 F.R.D. at 274 (citing *Paper Converting Machine Co. v. Magna–Graphics Corp.,* 207 U.S.P.Q. 1136, 1980 WL 30340 (E.D.Wis.1980)); *Struthers Scientific & Int'l Corp. v. General Foods Corp.,* 45 F.R.D. 375, 379 (S.D.Tex.1968). Defendants have limited their requests to applications that are based on the two applications that resulted in the patent in suit. They have not requested applications concerning sprinkler systems in general or any other broad category. This distinguishes these discovery requests from the ones in the cases Central cites to this Court. *Fischer,* 148 F.R.D. at 275 (request for applications filed on general subject matter of patent in suit; court held, "no specific showing of direct relevance or particularized need has been made"); *Struthers,* 45 F.R.D. 375 (same); *Wolowitz v. United States,* 185 U.S.P.Q. 155, 156, 1975 WL 21125 (Ct.Cl. 1975) (same); *Ideal Toy,* 478 F.Supp. at 1194–95 (continuing-type applications sought for patents other than those in suit, disclosure denied); *but cf. Great Lakes Carbon Corp. v. Continental Oil Corp.,* 23 F.R.D. 33, 35 (W.D.La.1958) (denying disclosure of defendant's application for allegedly infringing product). Indeed, many courts apparently routinely order disclosure of applications stemming from the patents in suit. *B. Braun Med.,* 155 F.R.D. at 528; *Scovill,* 61 F.R.D. at 602; *Ares–Serono, Inc. v. Organon Int'l, B.V.,* 862 F.Supp. 603, 607–08 (D.Ma. 1994); *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,* 707 F.Supp. 1429, 1441 (D.Del.1989); *Mushroom Assoc. v. Monterey Mushrooms, Inc.,* 25 U.S.P.Q.2d 1304, 1306 (N.D.Cal.1992) (unrelated applica-

tion disclosed because referred to patent in suit); *Paper Converting Machine Co.,* 207 U.S.P.Q. at 1137; *see also Key Tech., Inc. v. Simco/Ramic Corp.,* 137 F.R.D. 322, 324 (D.Or.1991) (denied request asking for any applications, not just patent in suit).

After balancing the interests of the parties, we find that the pending or abandoned applications and associated materials are relevant to this action, and that their importance outweighs Central's genuine interest in their confidentiality.[4] For this reason, we will Deny Central's Motion for Protective Order and grant the two Motions to Compel.

An appropriate Order follows.

### ORDER

AND NOW, this 8th day of September, 1995, upon consideration of Plaintiff's Motion for a Protective Order in both actions, and responses thereto, the Motion is hereby DENIED in accordance with the attached Memorandum. Upon consideration of Grinnell Corporation's Motion in 94–7482 to Compel Answers to Interrogatories and Production of Patent Applications Related to the '022 Patent as well as Viking's Motion in 94–7483 to Compel Production Pursuant to Fed. R.Civ.P. 37 and responses thereto, the Motions are hereby GRANTED in accordance with the attached Memorandum.

It is hereby ORDERED THAT Plaintiff Central shall fully respond to Viking's Request for Production of Documents, Grinnell's Interrogatories and Grinnell's Document Requests within fifteen days of the date of this Order's entry.

---

**4.** The parties have devoted a slight portion of their argument to the question whether applications are protected by the attorney-client privilege. The general understanding is that they are not. *Choat v. Rome Indus.,* 462 F.Supp. 728, 732 (N.D.Ga.1978). Nonetheless, Central contends that some documents may still be privileged. If there are some privileged materials that are otherwise responsive to the discovery requests, Central need not divulge them. Central must, however, prepare a privilege log for any documents not produced pursuant to Fed.R.Civ.P. 26(b)(5), so that the parties and this Court, if necessary, can determine whether a privilege rightfully protects those documents.