CORDIS CORPORATION, Plaintiff,

v.

**SCIMED LIFE SYSTEMS, INC., Defendant.**

**Civ. No. 4–96–261 (JRT/RLE)**

United States District Court,
D. Minnesota.

Sept. 15, 1997.

Chris Lind, David Berten, and Mary Moore, Chicago, IL, for plaintiff.

Dominic E. Massa, Boston, MA, for defendant.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Defendant's Motion to Compel Production of Patent Applications.

A Hearing on the Motion was conducted on July 17, 1997, at which time the Plaintiff appeared by Chris Lind, David Berten, and Mary Moore, Esqs., and the Defendant appeared by Dominic E. Massa, Esq.

For reasons which follow, we grant the Motion, in part.

## II. *Factual and Procedural Background*

In this action for patent infringement, the Plaintiff has alleged that the Defendant manufactured and sold a balloon catheter device, which assertedly infringes upon three of the Plaintiff's United State patents—specifically, Patent No. 5,156,612, which is entitled "Balloons for Medical Devices and Fabrication Thereof" ("the '612 Patent"); No. 5,304,197, which is also entitled "Balloons for Medical Devices and Fabrication Thereof" ("the '197 Patent"); and No. 5,449,371, which is entitled "Balloons for Medical Devices" ("the '371 Patent"). The Defendant represents, without contradiction from the Plaintiff, that each of these Patents-in-suit shares the same patent specification,[1] but presents differing patent claims.

In Request No. 8 of its First Requests for Production of Documents, the Defendant sought the production of "[t]he complete file history of any patent application owned or prosecuted by Cordis which includes claims directed, in whole or in part, to balloon materials or methods of making balloons." The Plaintiff objected to this Request insofar as it sought the production of file histories which related to pending patent applications, arguing that those applications were confidential, and that production of their file histories would unfairly provide the Defendant with a competitive advantage. Following informal inquiry, the Plaintiff has identified one pending United States patent application, which it has denominated as "the '095 Application".[2] As related by the Plaintiff, the '095 Application is a file wrapper continuation of an abandoned application—which has been designated as "the '530 Application".[3] The '530 Application, in turn, is a continuation of the '371 Patent which, as noted, is one of the three Patents-in-suit. Accordingly, the '095 Application, and its abandoned parent—the '530 Application—are the Applications which are at issue in this Motion, as the Defendant seeks the production of these Applications and their file histories.

## III. *Discussion*

■ A. *Standard of Review.* It is well-settled that the secrecy of pending and abandoned United States patent applications should be preserved whenever possible. See, e.g., *Avery Dennison Corp. v. UCB SA,* 1996 WL 633986 * 1 (N.D.Ill., October 29, 1996); *Central Sprinkler Co. v. Grinnell Corp.,* supra at 227; *Fischer Imaging Corp. v. Lorad Corp.,* 148 F.R.D. 273, 274 (D.Colo.1993); *PPG Indus., Inc. v. Libbey–Owens–Ford Co.,* 1991 WL 159133 * 2 (N.D.Ill., August 14, 1991); *Paper Converting Machine Co. v. Magna–Graphics Corp.,* 207 U.S.P.Q. 1136 (E.D.Wis.1980); *Ideal Toy Corp. v. Tyco Indus., Inc.,* 478 F.Supp. 1191, 1193 (D.Del. 1979); *Wolowitz v. United States,* 185 U.S.P.Q. 155, 156 (Ct.Cl.1975); *Struthers Scientific & Internat'l Corp. v. General Foods Corp.,* 45 F.R.D. 375, 381 (S.D.Tex. 1968). Indeed, the United States Patent and Trademark Office ("PTO") is commanded by

1. A patent's specification "contains a written description of the invention that must enable one of ordinary skill in the art to make and use the invention." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995) *en banc,* aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

2. Originally, the Plaintiff also identified a pending European patent application, which was designated as "number 8911 8420.2," and as to which the Plaintiff has declined to produce its file history. Recently, however, this application has resulted in the issuance of a European patent—which has been denominated as "number 8911 8420.2"—and, as a consequence, all of the documents, which are related to this patent, including its patent application file history, are now public. Accordingly, the Plaintiff no longer objects to the Defendant's requested access to the materials contained within this file history and,

indeed, has volunteered to produce those documents to the Defendant.

3. A "continuation application" is one which is filed during the pendency of an application that was previously filed by the same inventor, and which discloses and claims only subject matter which has been disclosed and claimed in the original or parent application. See, *Central Sprinkler Co. v. Grinnell Corp.,* 897 F.Supp. 225, 227 (E.D.Pa.1995); *Elkay Mfg. Co. v. Ebco Mfg. Co.,* 1995 WL 389822 * 16 n. 2 (N.D.Ill., February 15, 1995). By contrast, a "continuing-in-part application" is one which is based upon a previously filed application, but which includes new material to support new claims. See, *Central Sprinkler Co. v, Grinnell Corp.,* supra at 227. Lastly, the term "file wrapper continuation application" denotes a continuation of a previously filed application which had been abandoned. See, *37 C.F.R. § 51.62.*

statute to maintain the confidentiality of such patent applications, see, *Title 35 U.S.C. § 122,* and, while this mandate is not similarly binding upon the Courts, it is, nonetheless, entitled to some deference. See, *Avery Dennison Corp. v. UCB SA,* supra at * 1; *Central Sprinkler Co. v. Grinnell* Corp., supra at 227; *Fischer Imaging Corp. v. Lorad Corp.,* supra at 274; *Paper Converting Machine Co. v. Magna–Graphics Corp.,* supra at 1136; *Ideal Toy Corp. v. Tyco Indus,, Inc.,* supra at 1192.

Accordingly, the Courts have generally applied a balancing test to decide whether to compel discovery of pending or abandoned applications. *Avery Dennison Corp. v. UCB SA,* supra at * 2; *Central Sprinkler Co. v. Grinnell Corp.,* supra at 227; *Fischer Imaging Corp. v. Lorad Corp.,* supra at 274; *PPG Indus., Inc. v. Libbey–Owens–Ford Co.,* supra at * 2; *Paper Converting Machine Co. v. Magna–Graphics Corp.,* supra at 1136; *Ideal Toy Corp. v. Tyco Indus., Inc.,* supra at 1193; *Cleo Wrap Corp. v. Elsner Engineering Works, Inc.,* 59 F.R.D. 386, 388 (M.D.Pa.1972); *Struthers Scientific & Internat'l Corp. v. General Foods Corp.,* supra at 381–82; *Great Lakes Carbon Corp. v. Continental Oil Co.,* 23 F.R.D. 33, 35 (W.D.La.1958). This balancing test has been aptly summarized, as follows:

> [T]he question of whether disclosure should be ordered requires a balancing of competing policy and litigation interests. Disclosure of file wrappers of pending and abandoned applications should be ordered when the necessity for disclosure outweighs the desirability of maintaining the secrecy of data in the file wrapper, especially if protective measures can be fashioned to minimize the intrusion or to prevent excessive dissemination of the revealed material. Conversely, if the need to examine the file wrapper is less than the interest served in protecting secrecy, or if confidentiality could not be effective-

ly protected by other means, disclosure should not be ordered.

*Ideal Toy Corp. v. Tyco Indus., Inc.,* supra at 1193.[4] Or, stated differently, "[d]irect relevancy weighs on disclosure's side, whereas direct competition in the relevant marketplace by the parties weighs on secrecy's side." *Central Sprinkler Co. v. Grinnell Corp.,* supra at 227.

B. *Legal Analysis.* Here, the Defendant urges that the materials which comprise the file histories of the '095 and '530 Applications could prove relevant because they could contain certain admissions which counter the Plaintiff's assertion that the Defendant's product infringes upon the Patents-in-suit. In so urging, the Defendant relies upon the decisions of those Courts which have accepted that pending or abandoned applications of counterpart patents "may contain information or admissions that clarify, define or interpret the claims of the patent in suit." *Avery Dennison Corp. v. UCB SA,* supra at * 1; see also, *Central Sprinkler Co. v. Grinnell Corp.,* supra at 229; *B. Braun Medical Inc. v. Abbott Laboratories,* 155 F.R.D. 525, 528 (E.D.Pa.1994); *Bott v. Four Star Corp.,* 675 F.Supp. 1069, 1075 (E.D.Mich.1987) ("Information as to pending patent applications is important in patent litigation; such applications may contain admissions."); *Scovill Mfg. Co. v. Sunbeam Corp.,* 61 F.R.D. 598, 602 (D.Del.1973).

For its part, the Plaintiff attacks the Defendant's proffer of relevance on two levels. First, it dismisses the Defendant's relevancy argument as little more than an attempt to justify a blind "fishing trip" through the file histories of its pending and abandoned applications, in a quest for admissions. We do not, however, share such a jaundiced view of the Defendant's statement of relevancy. In this respect, the Defendant asserts that its allegedly infringing product is a "copolymer" balloon, which is made from a "polyamide elastomer". It further underscores the pres-

---

**4.** In *Avery Dennison Corp. v. UCB SA,* 1996 WL 633986 * 1 (N.D.Ill., October 29, 1996), the Court stated that the application of this balancing test requires an assessment of the relative strengths and weaknesses of the following factors:

1. the relevancy of the information to be gained from disclosure;

2. the availability of that information absent disclosure;

3. the potential harm resulting from disclosure to the party opposing access; and

4. the availability of a means to provide limited disclosure which could reduce any potential for harm.

ence of what it considers to be significant admissions, which are contained in the patent descriptions of certain of the Plaintiff's other balloon medical devices, and which are not the subject of the Patents-in-suit. In particular, the Defendant states that the description of the Plaintiff's balloon device, which is covered by United States Patent No. 5,342,-386, contains statements which reflect that the inventors of the device did not intend the Patent's coverage to encompass balloons which are made from a polyamide elastomer—the same substance of which the Defendant's allegedly infringing product is composed. In addition, the Defendant highlights certain statements, which were offered as part of the Plaintiff's application in support of a European patent for one of its other balloon devices, and specifically, statements which distinguish the device as being a "homopolymer," rather than a co-polymer device. As noted, the Defendant's product is a copolymer balloon catheter.

It is the Defendant's contention that the existence of these statements tends to detract from the Plaintiff's assertion that its Patents-in-suit have been infringed by the Defendant's balloon catheter, since the statements arguably demonstrate that the Plaintiff's related products are meaningfully distinct from the Defendant's device. Reasoning somewhat by analogy, the Defendant stresses the possibility that the file histories of the '095 and '530 Applications—which, as noted, are directly derived from the '371 Patent, that is one of the Patents-in-suit—could contain similar admissions which counter or detract from the Plaintiff's allegations of infringement.

Admittedly, this argument is heavily reliant upon hypothesis but, nevertheless, within this context, the proponent of discovery inescapably is caused to rely upon some measure of supposition, as the contents of the sought-after application can only be theorized, when framing a production request. See, *Avery Dennison Corp, v. UCB SA*, supra at * 1 ("The court does not agree that UCB, who

has not had access to the application files, should be required to point out specific evidence that it expects to obtain from disclosure."); *Central Sprinkler Co. v. Grinnell Corp.*, supra at 229 ("[I]t is unimportant that Defendants cannot point to specific evidence in the applications[;] Defendants do not have the applications and so must rely on supposition of what might be in them."). Accordingly, we are not inclined to dismiss the Defendant's relevancy rationale, for discovering the contents of the disputed application file histories, as a mere excuse to flail for fish.

The Plaintiff's other challenge to the Defendant's relevancy proffer is more cosmic in scale, in that the Plaintiff apparently argues that, as a matter of law, the information which is contained in the file histories of the '095 and '530 Applications, cannot be relevant to the proper interpretation of the scope of the coverage of the Patents-in-suit. In this respect, the Plaintiff notes that, should this action proceed to Trial, the Court will be required to conduct a so-called "Markman Hearing," in order to legally construe the claims of the Patents-in-suit and, in opposing the Motion to compel the '095 and '530 materials, the Plaintiff holds the conviction that these materials cannot have any relevance to the Court's construction of the Patents-in-suit. We disagree, however, as we find the Plaintiff's arguments on this score to be somewhat overstated.

As the governing law makes clear, whether a product or process infringes the properly construed claims of a patent—either literally or under the doctrine of equivalents[5]—is a question of fact. *Tanabe Seiyaku Co., Ltd. v. United States Internat'l Trade Comm'n*, 109 F.3d 726, 731 (Fed.Cir.1997). Accordingly, a patent infringement analysis involves two steps: first, the Court must determine the meaning and scope of the patent claims, which are asserted to be infringed, by a process which is commonly known as "claim construction" or "claim interpretation".[6] *Tanabe Seiyaku Co., Ltd. v. United*

**5.** Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Company, Inc. v.*

*Hilton Davis Chemical Co.,* —— U.S. ——, ——, 117 S.Ct. 1040, 1045, 137 L.Ed.2d 146 (1997).

**6.** In *Markman v. Westview Instruments, Inc.,* supra, 52 F.3d at 976–79, the Court of Appeals for the Federal Circuit determined that the construction of a patent's claims is a matter of law, which

States Internat'l Trade Comm'n, supra at 731; *Markman v. Westview Instruments. Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) en *banc*, aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The second step involves a comparison, by the trier of fact, of the properly construed claims and the allegedly infringing product. *Id.* At the initial step of claim construction, the Court is to ascertain the meaning of the patent's claims, by considering three sources: the claims, the specification, and the prosecution history. *Tanabe Seiyaku Co. Ltd. v. United States Internat'l Trade Comm'n*, supra at 731; *Markman v. Westview Instruments, Inc.*, supra at 979, citing *Unique Concepts. Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed.Cir.1991). In addition, "[e]xtrinsic evidence, that is evidence outside the record before the PTO, such as expert testimony about how those skilled in the art would interpret certain language in the claim, may also be considered when appropriate as an inherent part of the process of claim construction and as an aid in arriving at the proper construction of the claim."[7] *Tanabe Seiyaku Co., Ltd. v. United States Internat'l Trade Comm'n*, supra at 732, citing *Markman v. Westview Instruments, Inc.*, supra at 979.

■■■ To summarize, when construing or interpreting patent claims, the Court looks to the claims themselves, their specification and prosecution history, and to permissible extrinsic evidence. As we understand its argument, the Plaintiff contends that the materials, which are contained in the file histories of the '095 and '530 Applications, cannot be characterized as falling under the rubric of any of these categorizations. As a result, the argument continues, these materials are irrelevant, as a matter of law, to the construction or interpretation of the claims of the Patents-in-suit. For its part, the Defendant urges that the '095 and '530 materials are potentially relevant to the claim construction of the Patents-in-suit, either because the materials are encompassed within the prosecution histories of the Patents-in-suit, or as admissible extrinsic evidence. Upon the Record as it now exists, we agree with the latter of these contentions.

First, we note that, quite recently, in *Tanabe Seiyaku Co., Ltd. v. United States Internat'l Trade Comm'n*, supra at 733, the Court held that, in determining whether a patented process was infringed under the doctrine of equivalents, the patentee's representations to foreign patent offices, which were made in connection with counterpart foreign patent applications, were relevant to determining whether a person skilled in the art would consider certain solvents, which were used in the covered process, to be interchangeable. Reasoning by analogy, the Defendant urges—and we think correctly—that, should the Court reach the application of the doctrine of equivalents when construing the claims of the Patents-in-suit, then any representations which were made by the Plaintiff, or its agents, in connection with the related '095 and '530 Applications, could prove relevant in determining whether "a person skilled in the art" would consider the Defendant's balloon catheter device to have infringed the balloon devices which are governed by the Patents-in-suit.

is vested exclusively in the Court, and this holding was expressly affirmed upon further review by the Supreme Court. *Markman v, Westview Instruments, Inc., supra,* 517 U.S.. at ——, 116 S.Ct. at 1389.

7. As explained by the Federal Circuit, in *Markman v. Westview Instruments, Inc., supra,* 52 F.3d at 981, "[e]xtrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims." In the words of the Court:

A judge is not usually a person conversant in the particular technical art involved and is not the hypothetical person skilled in the art to whom a patent is addressed. Extrinsic evidence, therefore, may be necessary to inform the court about the language in which the patent is written. But this evidence is not for the purpose of clarifying ambiguity in claim terminology. It is not ambiguity in the document that creates the need for extrinsic evidence but rather unfamiliarity of the court with the terminology of the art to which the patent is addressed.

*Id.* at 986.

Hence, in enumerating the possible categories of admissible extrinsic evidence, the Court emphasized those didactic sources, including "expert and inventor testimony, dictionaries, and learned treatises[,]" see, *id.* at 980, which could best assist the Court in arriving at " 'the true meaning of the language employed' in the patent." *Id.,* quoting *Seymour v. Osborne,* 11 Wall. 516, 78 U.S. 516, 546, 20 L.Ed. 33 (1870).

Second, while we can accept the accuracy of the Plaintiff's assertion, that no decision of the Federal Circuit has ·expressly endorsed the use of materials, which have been found in related United States pending or abandoned patent applications, when construing the claims of a patented product or process,[8] the obverse of that same proposition is also true—namely, that the Federal Circuit has never expressly disavowed the practice. This omission is significant for, notwithstanding the Plaintiff's argument to the contrary, it is neither unprecedented, unheard-of, aberrant, nor even particularly unusual, for a Court to order the disclosure of information which is contained in pending or abandoned patent applications. Rather, our independent research reveals that, for at least the last several decades—and well before the creation of the Federal Circuit Court of Appeals in 1982—the United States District Courts, including our own, have been confronting the issue of whether to order the disclosure of such materials. See, e.g., *Britt Tech Corp. v. L & A Products, Inc.*, 223 F.Supp. 126 (D.Minn.1963); *Zenith Radio Corp. v. Dictograph Products Co.*, 6 F.R.D. 597, 598 (D.Del.1947); *National Transformer Corp. v. France Manufacturing Co.*, 9 F.R.D. 606 (N:D.Ohio 1949); *Great Lakes Carbon Corp. v. Continental Oil Co.*, supra at 34–35; *Meese v. Eaton Manufacturing Co.*, 35 F.R.D. 162, 165 (N.D.Ohio 1964); *Struthers Scientific & Internat'l Corp. v. General Foods Corp.*, supra at 381–82; *Cleo Wrap Corp. v. Elsner Engineering Works, Inc.*, supra at 388.

Indeed, within this body of case law, the balancing formula between the competing interests of direct relevancy, and direct competition, first took root, see, e.g., *Paper Converting Machine Co. v. Magna–Graphics Corp.*, supra at 1136; *Ideal Toy Corp. v. Tyco Indus., Inc.*, supra at 1193; *Cleo Wrap Corp. v. Elsner Engineering Works, Inc.*, supra at 388; *Struthers Scientific & Internat'l Corp. v. General Foods Corp.*, supra at 381–82; *Great Lakes Carbon Corp. v. Continental Oil Co.*, supra at 35, and, as our earlier discussion demonstrates, the Courts have continued to apply this balancing test since the creation of the Federal Circuit. See, *Avery Dennison Corp. v. UCB SA*, supra at * 2; *Central Sprinkler Co. v. Grinnell Corp.*, supra at 227; *Fischer Imaging Corp. v. Lorad Corp.*, supra at 274; *PPG Indus., Inc. v. Libbey–Owens–Ford Co.*, supra at * 2. Notably, in the fifteen years since its inception, the Federal Circuit has not expressed any disapproval of the use of this balancing formula.

Accordingly, we are persuaded by the reasoning of those Courts which have determined that the information, which is contained in related, pending and abandoned patent applications, can have relevance to the proper construction of the claims of a patent-in-suit. Moreover, we have previously concluded that the Defendant has produced an adequate threshold showing of the potential relevance of the file histories of the '095 and '530 Applications. Therefore, what remains for our analysis is a balancing of this proffer of relevancy with the Plaintiff's interest in preserving the confidentiality of these Applications.

Not unexpectedly, no one here disputes the propriety of the Plaintiff's interest in maintaining the secrecy of the '095 and '530 Applications and, as the Plaintiff and the Defendant are direct competitors, this interest is entitled to considerable deference. See, e.g., *Avery Dennison Corp. v. UCB SA*, supra at * 2; *Central Sprinkler Co. v. Grinnell Corp.*, supra at 228; *Fischer Imaging Corp. v. Lorad Corp.*, supra at 274; *Wolowitz v. United States*, supra at 155; *Struthers Scientific & Internat'l Corp. v. General Foods Corp.*, supra at 381. We conclude, however, that the competing interests of confidentiality and relevancy can here be harmonized by initially restricting access to the materials, which comprise both the '095 and '530 Applications and their attendant file histories, to the Defendant's outside litigation counsel of Record, and to those outside experts who are retained by outside counsel, and who agree to maintain, inviolate, the confidential status of those materials. Should the Defendant's outside counsel subsequently determine that there exists a

---

**8.** But cf., *Tanabe Seiyaku Co., Ltd. v. United States Internat'l Trade Comm'n*, 109 F.3d 726, 733 (Fed.Cir.1997) (statements made by patentee in connection with counterpart foreign applications relevant to claim construction of U.S. patent).

compelling need to divulge this restricted information to either the Defendant, or the Defendant's in-house counsel, then counsel may seek leave to do so by making the appropriate application to the Court.

NOW, THEREFORE, It is—

ORDERED:

That the Defendant's Motion to Compel Production of Patent Applications [Docket No. 51] is GRANTED in part.